In re Francis Joseph MILLOW,
Appellant.

No. 591, Docket 75–1381.

United States Court of Appeals,
Second Circuit.

Argued Dec. 2, 1975.

Decided Jan. 13, 1976.

Mark A. Varrichio, New York City, for appellant.

Michael D. Abzug, Sp. Atty., U. S. Dept. of Justice, New York City (Thomas J. Cahill, U. S. Atty. S. D. N. Y. and John D. Gordan, III, Asst. U. S. Atty., New York City, on the brief), for United States.

Before LUMBARD, FRIENDLY and MULLIGAN, Circuit Judges.

LUMBARD, Circuit Judge:

Francis Joseph Millow asks us to vacate an order of the Southern District entered on October 31, 1975, under which he has been confined pursuant to 28 U.S.C. § 1826(a) for failure to answer questions before a grand jury. Millow asserts that he was entitled to withhold his testimony because the government admitted that it had obtained evidence that served as the basis for questions propounded by the grand jury through the illegal use of wiretapping. Alternatively, Millow maintains that he is excused from answering questions because the government has not fulfilled its obligation to affirm or deny the use of illegal wiretaps as required by 18 U.S.C. § 3504.[1] We find no merit in either assertion and affirm the order of contempt.

In early October 1975, Millow was summoned before a federal grand jury investigating possible violations of laws prohibiting the operation of illegal gambling businesses and the general conspiracy statute, 18 U.S.C. §§ 371, 1955. After several delays at Millow's request he moved to quash his subpoena on the grounds that his testimony was unnecessary to a conviction and that he should be granted a hearing to determine whether the grand jury had employed the product of illegal wiretaps as the basis of his interrogation. At a hearing on October 28, 1975, the government produced the orders issued by Westchester County Court Judge Rubin that authorized interception of Millow's telephone lines by members of the Westchester County District Attorney's Office for a sixty-day period in 1974.[2] After a review of the order and the affidavits and applications on which it was based, Judge Pierce found them facially sufficient and denied Millow's motion to quash.

Millow then appeared before the grand jury on October 29, 1975, but invoked his right against self-incrimination and refused to answer questions. Millow was then granted immunity under 18 U.S.C.

---

**1.** Section 3504 provides, in relevant part:

  (a) In any trial, hearing, or other proceeding in or before any . . . grand jury . .

  (1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act . . . .

**2.** This procedure is authorized by 18 U.S.C. § 2516(2) and New York Crim.Pro. Law §§ 700.10–.40.

§ 6002. Nevertheless, Millow continued his refusal to testify on the ground that he was appealing the denial of his motion to quash.[3]

On October 31, 1975, the Special Attorney in charge of the government's investigation requested that Judge Pierce find Millow in contempt and confine him in prison without bail pursuant to 28 U.S.C. § 1826(a). Judge Pierce heard arguments on the contempt and bail issues and received an affidavit from Millow asserting that his failure to testify was justifiably predicated on illegal wiretapping of his telephone line that allegedly had been conceded in a statement by the Special Attorney to Millow during the October 29 grand jury proceedings. Millow also contended that he should neither be held in contempt nor be ordered to testify because the government had not denied under oath that it had engaged in illegal wiretapping. Judge Pierce rejected Millow's arguments and ordered him confined until he was willing to testify or until the expiration of the grand jury's term.

On November 14, 1975, a panel of this court denied Millow's motion for bail pending appeal of his contempt citation but expedited the appeal which we heard on December 2, 1975.[4] At that time we indicated our affirmance of the order of confinement and we issue this opinion to supplement that judgment. *Cf., United States v. Hunt,* 513 F.2d 129 (10th Cir. 1975).

We hold that it was sufficient for the government to show that there was a valid court order authorizing a wiretap in answer to Millow's charges of illegally obtained evidence. Judge Pierce was clearly correct in rejecting Millow's claim that the government's statement was proof that it had violated the order, as it is clear that the statement showed nothing of the sort.

Millow's original request for a hearing on the existence of any wiretap was based on his attorney's knowledge that some electronic surveillance had been used in the investigation of other persons involved in the same activities that led to the examination of Millow and on the mere suspicion that some of the wiretaps might have been placed on Millow's telephone lines without an appropriate court order.[5] The government responded to this demand by presenting to Judge Pierce the court orders issued by Westchester County Court Judge Rubin and the affidavits submitted at the time that order was requested. After a review of this material, Judge Pierce found that there had been a sufficient basis for authorizing the wiretap.

---

**3.** The denial of the motion to quash was unappealable. See *United States v. Nixon,* 418 U.S. 683, 690–91, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

**4.** At oral argument, the government submitted affidavits from the Special Attorney from the United States Department of Justice in charge of the case, a senior Assistant District Attorney in Westchester County, and a Special Agent from the FBI assigned to the case, and a letter from the Assistant Attorney General, Criminal Division, of the Department of Justice, denying the use of any unlawful electronic surveillance in this case.

**5.** At the October 28 hearing on the motion to quash, Mr. Varrichio, Millow's attorney, set forth the basis for his suspicions of illegal wiretapping in the following colloquy:

The Court: Just a minute now. Do you wish to go further and suggest why you think there might be an illegality involved here?

Mr. Varrichio: Yes, your Honor. There has been extensive use of wiretaps and wiretap orders, et cetera, involving this particular investigation and I have gone into it to some extent in Westchester County, and the cases pending up there, I happen to have two of them, and I am not at all satisfied in my own mind that the information which led to any wiretap was obtained by legal means. I understand that there are affidavits that have been submitted by federal agents and state agent (sic), et cetera, but I do not know where and when the investigation started, how it was commenced or things of that nature.

Now, I am sure that this investigation had to start somewhere with someone and until that information is furnished to this court or some other court, I do not see how anyone can possibly determine whether or not any information obtained as a result of this information has been legally obtained.

■ The government's submission of a court order authorizing electronic surveillance and Judge Pierce's determination of the validity of that order precludes Millow from further litigating in a contempt proceeding the legality of that surveillance. In *In re Persico*, 491 F.2d 1156 (2d Cir.), cert. denied, 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158 (1974), this court confronted a claimed inconsistency in a statute that forbids the use in grand jury proceedings of evidence derived from illegal wiretapping, 18 U.S.C. § 2515, and yet precludes the use of suppression hearings of the type Millow originally requested to determine the legality of the seizure of evidence to be used in grand jury proceedings, 18 U.S.C. § 2518(10)(a). We resolved the ambiguity by holding that a refusal to testify under 18 U.S.C. § 2515 would be permissible only where the government has admitted its illegal conduct or failed to produce a court order authorizing the challenged surveillance, as in either case a plenary suppression hearing is unnecessary. 491 F.2d at 1162.[6]

■ Here, the government has introduced a court order sufficient under *Persico* to avert further litigation by a subpoenaed witness on the legality of the surveillance. While not asserting that this order is invalid, Millow does contend, however, that the government has conceded the patent illegality necessary under *Persico* to justify his refusal to testify. We disagree.

Millow rests his contention on what he claims to be an admission made during the October 29 proceedings by the Special Attorney from the Justice Department that the period of electronic surveillance of Millow lasted for two years and thereby exceeded the sixty-day period authorized in the court order obtained in Westchester County. The Special Attorney stated:

"I also want to advise you, Mr. Millow, that you are a target of this investigation and that my questions here today were based upon electronic surveillance, physical surveillance of your movements in the past two years by the Federal Bureau of Investigation and local law enforcement officials, witnesses before this Grand Jury, and statements which you have made to myself, Mr. Emory, and Special Agent Douglas Wilhelmi."

It is clear from this statement, as later clarified by the Special Attorney at the October 31 contempt hearing,[7] that the "two years" period concerns only physical surveillance and not electronic surveillance. Millow's continued reliance upon the above statement to demonstrate patent illegality under *Persico* is without merit.

■ Millow next seeks to have the contempt order vacated because his assertion that electronic surveillance exceeded the terms of the court order has not been refuted by affidavits from the government. Millow invokes 18 U.S.C. § 3504 which provides that "upon a claim by a party aggrieved" that evidence in a grand jury or other judicial or administrative proceeding is inadmissible be-

---

**6.** This reasoning has been accepted by the Fifth Circuit, *In re Grand Jury Proceedings*, 522 F.2d 196 (5th Cir. 1975), and by the Ninth Circuit, *Droback v. United States*, 509 F.2d 625 (9th Cir. 1974), cert. denied, 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 450 (1975). But see *In re Lochiatto*, 497 F.2d 803 (1st Cir. 1974).

**7.** At the October 31 contempt hearing, the Special Attorney quoted the statement in dispute to the court and then stated:

I think Mr. Millow misunderstood what I was advising him. I merely advised him that his physical movements had been under surveillance, not that his phone had been tapped as apparently he told his defense attorney for two years. That is not the case, your Honor. I am familiar with all aspects of this investigation, your Honor. There is no electronic surveillance that has been placed on either a premises controlled by Mr. Millow or a telephone which is registered to Mr. Millow or which Mr. Millow used other than the ones that have been placed before your Honor. That is the only electronic surveillance that I am aware of in this case, and since I am the attorney who is going to be propounding these questions, your Honor, before the grand jury, I believe that that's dispositive.

cause it is the fruit of an illegal act such as wiretapping, the opponent of the claim "shall affirm or deny the occurrence of the alleged unlawful act." We hold that where, as here, assertions of misconduct are so obviously frivolous and lack even a colorable basis there is no "claim" sufficient to trigger the government's obligation within the meaning of § 3504.

■ Clearly, § 3504 was intended to place an additional check on the government's use of illegally seized evidence and it may provide aggrieved parties with a means of determining whether, pursuant to 18 U.S.C. § 2515, they could properly challenge questions propounded to them in adjudicatory proceedings. See *Gelbard v. United States,* 408 U.S. 41, 52–55, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). Once a substantial claim is made under the statute, those government agencies closest to the investigation must scrupulously search their files and submit affidavits affirming or denying the validity of the aggrieved party's claim and indicating which agencies have been checked. See *In re Buscaglia,* 518 F.2d 77, 79 (2d Cir. 1975); *United States v. Toscanino,* 500 F.2d 267, 281 (2d Cir. 1974).

■ The statute was not intended, however, to transform an investigation by the government into an investigation of the government where claims of illegality lack substantial support. Accusations of misconduct based on unsupported suspicion or patently frivolous contentions should not be deemed "claims" sufficient to require any further inquiry and thus delay orderly proceedings of the grand jury. This conclusion is mandated by the wide latitude historically accorded to grand juries and by the need to avoid delay in grand jury investigations which neither adjudicate guilt or innocence nor proceed in the adversarial tradition of the trial courtroom. Thus, it has been held that a grand jury may ask questions based on evidence seized in violation of the Fourth Amendment, *United States v. Calandra,* 414 U.S. 338, 349–52, 94 S.Ct.

613, 38 L.Ed.2d 561 (1974); the grand jury may consider evidence obtained in violation of the Fifth Amendment, *United States v. Blue,* 384 U.S. 251, 255 n.3, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); and it may rely upon hearsay or otherwise incompetent evidence where the nature of the evidence is revealed to the grand jurors, *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Marquez,* 462 F.2d 893 (2d Cir. 1972). Nor will the court conduct a hearing to determine the source of the evidence on which the grand jury interrogation is based, *Lawn v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958).

Although the allegations of unlawful wiretapping required to trigger the government's obligation to respond by affidavit or sworn testimony need only set forth a colorable claim, the claims made in this case do not satisfy even that threshold criteria. Millow has indicated no factual circumstances from which it could be inferred that he was the subject of an illegal wiretap. He made no allegation such as those in *United States v. Grusse,* 515 F.2d 157 (2d Cir. 1975), where we held that a claim of unlawful wiretapping based, as the district court said, "on conclusory statements that the questions asked must have come from such surveillance, as well as more particularized claims to telephone malfunctioning and unusual sounds heard on telephones" were sufficiently answered by an affidavit of the Assistant United States Attorney and his testimony that he had checked with the FBI agent in charge of the investigation that no electronic surveillance had occurred. Compare *In re Vigil,* 524 F.2d 209, 214 (10th Cir. 1975), holding that under similar facts not even this was required.

At the October 31 contempt hearing, Millow did submit an affidavit to bolster his assertion of illegal wiretapping. That affidavit, however, merely recounted the patently frivolous contention we have dealt with above, namely, that the government had conceded misconduct in

its October 29 statement concerning electronic and physical surveillance of Millow.

 Unsupported suspicion and patently frivolous assertions of government misconduct do not constitute a "claim" under § 3504 sufficient to trigger the government's obligation to disrupt grand jury proceedings and check thoroughly the applicable agency records. We know of no authority to the contrary. While in *United States v. Toscanino*, 500 F.2d 267, 281 (2d Cir. 1974), we cited with approval language from *In re Evans*, 146 U.S.App.D.C. 310, 452 F.2d 1239, 1242 (1971), cert. denied, 408 U.S. 930, 92 S.Ct. 2479, 33 L.Ed.2d 342 (1972) to the effect that a mere assertion of illegal conduct would trigger the government's obligations under § 3504, that language must be read in light of the detailed averments of illegal electronic surveillance in *Tosacnino*, 500 F.2d at 270–71. The majority opinion in *In re Evans*, supra, insofar as it allows a witness to rely on "mere assertion", seems to us to be unsound. See also *United States v. Vielguth*, 502 F.2d 1257 (9th Cir. 1974) (§ 3504 obligation triggered by affidavit declaring that questions propounded by grand jury "could only have been obtained by illegal electronic surveillance of my conversations or of my premises"); but see *In re Vigil*, supra.

Other courts have found that the nature of the government's investigation and denial of misconduct under § 3504 depends upon the specificity of the charges made by the grand jury witness. See *United States v. Stevens*, 510 F.2d 1101 (5th Cir. 1975); *United States v. See*, 505 F.2d 845 (9th Cir. 1974), cert. denied, 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975). While our finding that there was no "claim" at all in this case makes it unnecessary to consider the application of a "fluid standard" to the resolution of such situations, we note that these cases indicate that not every accusation of misconduct by the prosecution requires a detailed response by government agencies to determine their participation in any wrongdoing. See also *In re Mintzer*, 511 F.2d 471 (1st Cir. 1974).

Finally, Millow requests that if we find against him on the merits, we grant bail pending an application for certiorari to the Supreme Court. A person confined pursuant to 28 U.S.C. § 1826(a) may have bail set pending appeal only if it appears that the appeal is not frivolous or taken for delay, 28 U.S.C. § 1826(b). At oral argument the government submitted the affidavits requested by Millow.[8] Thus, even if we are wrong in our conclusion that responsive affidavits from the government were unnecessary because there was no claim made by Millow, the fact that the government has now submitted affidavits which comply fully with its obligation even under the strictest reading of § 3504 makes frivolous any petition which Millow could file. See *In re Buscaglia*, 518 F.2d 77 (2d Cir. 1975). The request for bail is denied.

The order of the district court is affirmed. The mandate shall issue forthwith.