In the Matter of INVESTIGATIVE GRAND JURY PROCEEDINGS ON APRIL 6, 1977 and continuing (Lynchburg, Virginia).

Misc. No. 77–00001.

United States District Court,
W. D. Virginia,
Lynchburg Division.

April 18, 1977.

E. Montgomery Tucker, Asst. U. S. Atty., Roanoke, Va., for plaintiff.

Solz, Rosen, Washington, Joseph M. Whitehead, Chatham, for petitioners.

1. The nine witnesses are:
   Aubrey Henderson
   Charles James Royster
   Tencha Williamson, aka Tencha Williams
   Wayne Holley
   Herbert Owen Boyd
   Harold Wayne Dowdy

OPINION

WILLIAMS, District Judge.

This case is presently before this court for rulings on motions filed by the Government and the attorneys for a number of witnesses scheduled to appear before the Special Grand Jury for the Western District of Virginia. The Government has moved this court to disqualify two attorneys, Sol Z. Rosen and Joseph M. Whitehead, from representing nine witnesses scheduled to appear before the Grand Jury, which has been investigating possible violations of federal laws relating to interstate prostitution activities and racketeering.[1] The attorneys for the witnesses have filed separate motions to quash the Grand Jury subpoenas and to suppress evidence, wherein they allege that the Government has conducted illegal electronic surveillance of the witnesses' homes and businesses. In this motion, which is filed pursuant to 18 U.S.C. § 3504, the witnesses demand that the Government affirm or deny the existence of any illegal telephonic interceptions or wiretaps. The court initially denied this motion, which is now before this court on a petition for reconsideration.

On February 15, 1977, the investigatory Grand Jury was duly convened in the City of Lynchburg, Virginia. At that time, Messrs. Whitehead and Rosen filed motions to quash the subpoenas and to suppress evidence on behalf of several witnesses scheduled to appear and give testimony. After the court denied these motions, the witnesses appeared before the Grand Jury but refused to answer questions, asserting their Fifth Amendment right not to give evidence which might be used against them. During these proceedings, the United States Attorney advised one of the attorneys, Mr. Whitehead, that he was a potential target of the Grand Jury investigation and that his clients were potential witnesses against him. On March 30, 1977, Mr. Whitehead was advised of this situation in open court and was asked to withdraw as

Betty Searce Childress
Thomas James Barker
Phyllis Jean Nunley
The court notes that the motion for disqualification is also apparently aimed at a person named Robin, aka Jo Ann Meadows.

counsel of record, which request Whitehead refused.

When the Grand Jury reconvened on April 6, 1977, the United States Attorney filed motions to disqualify Whitehead and Rosen on grounds of conflict of interest. The Government argues that once Whitehead was advised that he was a potential target of the investigation, he had an ethical obligation to withdraw as counsel for the other witnesses, on the grounds that he would otherwise be in a position to suppress possible testimony against him and impede the Grand Jury's investigation. The Government also seeks to disqualify both Whitehead and Rosen because they represent multiple clients with potentially conflicting interests. It might be in the interest of one witness, the Government suggests, to cooperate with the Grand Jury and receive immunity in exchange for testimony against another witness. With one attorney representing all witnesses, however, the U.S. Attorney states that it could not convince counsel to elicit the cooperation of one witness when to do so might implicate the attorney's other clients in illegal activity. As a result, the Government argues, witnesses in this proceeding have made unwarranted assertions of the Fifth Amendment privilege against self-incrimination in order to protect other persons involved in the investigation.

Counsel for the witnesses opposed the Government's motion and filed affidavits signed by each witness in which the witnesses stated that they desired to retain Messrs. Rosen and Whitehead, even though they recognized that a conflict of interest could potentially arise. In light of the assertions by the witnesses that they freely chose Whitehead and Rosen to represent them, the court decided to conduct a *voir dire* examination of five of the witnesses initially summoned to appear before the Grand Jury to determine whether there was any potential conflict of interest that would require the disqualification of either attorney. At the request of Mr. Rosen, the court agreed to hold such hearings *in camera* and *ex parte*. The witnesses were sworn in open court and were then questioned individually in chambers.

On motion of counsel for the witnesses, the court ordered that the record of the proceedings be sealed. For this reason, the court finds that it would be inappropriate to discuss the substance of the testimony given at the *in camera* hearing unless ordered to unseal the record by an appellate court or petitioned to do so by a responsible committee of the Virginia State Bar, or upon further order of this court. The court will, however, set forth in this opinion the conclusions it reached as a result of the *voir dire* examination of the witnesses.

At the conclusion of the *in camera* proceeding, the court ruled that the testimony of the witnesses established not only a potential but an actual conflict of interest in Mr. Whitehead and Mr. Rosen's representation of multiple witnesses before the Grand Jury. In the case of Mr. Whitehead, the court stated that the conflict was of even greater magnitude because he had been advised that he was a potential target of the investigation. The court advised the parties that an actual conflict of interest existed because three of the witnesses had testified that they would take the Fifth Amendment rather than testify against the other witnesses or their own attorney, Mr. Whitehead.

■ Under the law, the court, as an incident to its supervisory power over a Grand Jury, has the inherent power to control the litigation over which it is presiding and the duty to supervise the conduct of lawyers practicing before to prevent gross impropriety. Where a breach of ethics is made to appear, the court has the authority to grant a motion to disqualify and to remove the offending lawyer(s). *Pirillo v. Takiff*, 462 Pa. 511, 341 A.2d 896 (1975); *In Re Investigation Before April, 1975 Grand Jury*, 174 U.S.App.D.C. 268, 531 F.2d 600 (1976). Moreover, under the ABA Code of Professional Responsibility, this court has the duty and the responsibility to insure that the conduct of an attorney before this court measures up to the minimal standards of conduct set forth in the Code. Rule EC

5–15 of the ABA Code of Professional Responsibility states that

"If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. If a lawyer accepted such employment and the interests did become actually differing, he would have to withdraw from employment with likelihood of resulting hardship on the clients; and for this reason it is preferable that he refuse the employment initially. On the other hand, there are many instances in which a lawyer may properly serve multiple clients having potentially differing interests in matters not involving litigation. If the interests vary only slightly, it is generally likely that the lawyer will not be subjected to an adverse influence and that he can retain his independent judgment on behalf of each client; and if the interests become differing, withdrawal is less likely to have a disruptive effect upon the causes of his clients."

■ The duty to enforce the ABA standards of ethical responsibility places additional responsibility on this court to restrain conduct which has the potential for evolving into a breach of ethics before such conduct becomes ripe for disciplinary action. *In the Matter of Grand Jury Proceedings*, 428 F.Supp. 273 (E.D.Mich.1976). In the same vein, however, the court recognizes that consideration must also be given to the right of an attorney to practice his profession. Moreover, the right of the Grand Jury witnesses to counsel of their own choosing cannot be impaired without a clear demonstration of an overriding interest against such representation. *Pirillo v. Takiff, supra.*

■ From a review of the record, including the *in camera* testimony, the court must conclude that there are several overriding factors that warrant the disqualification of Messrs. Whitehead and Rosen. Most importantly, the right of the witnesses to the effective assistance of counsel and the right of the public to an effective, thorough Grand Jury investigation would be seriously impaired if Whitehead and Rosen were allowed to continue to serve as counsel in this proceeding. Now that Whitehead has been advised that he is a target of the investigation, he has a clear and direct conflict of interest with the witnesses he represents. Many of the witnesses would be disinclined to testify against him and would risk contempt charges because Whitehead is their attorney. Moreover, Whitehead would not be in a position to effectively counsel these witnesses on the possibility of seeking immunity from prosecution in exchange for testimony that might implicate him. Because the witnesses desire not to testify against Whitehead, they would improperly invoke the Fifth Amendment privilege if questioned by the Grand Jury on any alleged criminal activity on the part of Mr. Whitehead. This would, of course, be detrimental to the interests of the witnesses and would seriously impede the Grand Jury's investigation.

■ The court also finds that the multiple representation of witnesses in this case by these two attorneys has created not only a potential conflict of interest but an actual conflict of interest as well. Neither attorney can meaningfully negotiate with the Government for immunity for any one witness in exchange for that person's testimony because the testimony might implicate the lawyers' other clients in illegal activity. As a result, the witnesses would improperly invoke the Fifth Amendment privilege rather than testify against each other, thus erecting a conspiratorial "stone wall" to the Grand Jury's investigation. In so doing, they would risk being charged with contempt of court, a violation which carries an 18-month jail sentence. The court thus con-

cludes that Rosen and Whitehead should be disqualified from representing multiple witnesses in this case and that the parties should be given a reasonable length of time to obtain other counsel.

Nothing in the case of *In Re Investigation Before the April, 1975 Grand Jury, Appeal of Sol Z. Rosen, supra,* persuades this court to reach a contrary result. There, the Court of Appeals reversed an order by the District Court granting the Government's motion to disqualify Mr. Rosen from representing several witnesses before the Grand Jury. The basis of the ruling, however, was that the lower court had failed to conduct an adequate fact-finding procedure to determine whether or not any conflict of interest existed. Absent from the record was any testimony of the individual witnesses summoned to appear before the Grand Jury. In this proceeding, however, the court held lengthy, *in camera* sessions with each witness prior to ruling on the question of whether or not Messrs. Rosen and Whitehead's representation of these witnesses was proper.

■■■ After the court granted Government's motion to disqualify, Mr. Rosen petitioned this court to "clarify" the order and to allow him to represent at least one or more witnesses before the Grand Jury. The court is of the opinion, however, that the petition should be denied. If Rosen were allowed to represent one or more witnesses in this proceeding, the court fears that he would be provided with an opportunity to use confidential information obtained in prior attorney-client relationships to the detriment of his former clients. In such case, a potential conflict of interest could still arise. Because an attorney should avoid even the appearance of impropriety, the court therefore finds that Mr. Rosen should be precluded from representing even one of the witnesses in this Grand Jury investigation.

■■■ The witnesses scheduled to appear before the Grand Jury next seek to obtain an order quashing the subpoenas on the grounds that the Government has subjected them to illegal electronic surveillance, eavesdropping and wiretapping. The witnesses maintain that they are excused from answering questions propounded to them by the Grand Jury because the Government has not fulfilled its obligation to affirm or deny the use of illegal wiretaps as required by 18 U.S.C. § 3504 (1976 Cum.Supp.). This section provides that, "upon a claim by a party aggrieved" that evidence in a grand jury or other judicial or administrative proceeding is inadmissible because it is the fruit of an illegal act such as wiretapping, the opponent of the claim "shall affirm or deny the occurrence of the alleged unlawful act" by submitting affidavits filed by Government law enforcement agencies closest to the investigation. However, unsupported suspicion and unsubstantiated conclusory allegations of governmental misconduct do not constitute a "claim" under § 3504 sufficient to trigger the Government's obligation to disrupt grand jury proceedings and thoroughly review applicable agency records. *In Re Millow,* 529 F.2d 770 (2d Cir. 1976); *United States v. D'Andrea,* 495 F.2d 1170 (3d Cir. 1974). Furthermore, when a witness' claim of illegal wiretapping is general and unsubstantiated, a general denial by the Government is sufficient to preclude further litigation of the issue, unless the witness can present factual allegations demonstrating that the denial of the Government was false. *United States v. Stevens,* 510 F.2d 1101 (5th Cir. 1975); *In Re Horn,* 458 F.2d 468 (3d Cir. 1972). In this proceeding, the witnesses have failed to present one shred of evidence to support their allegations that they have been subjected to illegal electronic surveillance or to any type of surveillance at all. On the other hand, the United States Attorney, Paul R. Thomson, represented to the court on February 16, 1977 that, to his knowledge, and based upon his own personal experience with the case for a number of years, there had been no legal or illegal electronic surveillance of the witnesses scheduled to appear before the Grand Jury. The witnesses have not submitted to the court any factual basis for disputing the representation of the U.S. Attorney. Thus,

the court concludes that the motion filed by the Grand Jury witnesses is not meritorious, and was designed simply for the purpose of disrupting and hindering the investigation now under progress. Accordingly, the motion to reconsider the denial of the motions to quash the subpoenas and to suppress evidence is hereby denied.

An order will be entered in accordance with this opinion.