**Eduardo CRUZ, Petitioner,**

v.

**Robert ALEXANDER and Edward Hammock, Chairman of the New York State Department of Parole, Respondents.**

No. 77 Civ. 5976 (RWS).

United States District Court,
S. D. New York.

Sept. 12, 1979.

518

Center for Constitutional Rights, New York City, for petitioner; Jose Antonio Lugo, John W. Corwin, Rhonda Copelon, New York City, of counsel.

Robert Abrams, Atty. Gen., State of New York, New York City, for respondents; Tyrone M. Powell, Asst. Atty. Gen., New York City, of counsel.

## OPINION

SWEET, District Judge.

Petitioner Eduardo Cruz ("Cruz") was convicted of possession of explosive substances in the New York Supreme Court, and was sentenced in 1971 to a term of seven years. His conviction was affirmed by the Appellate Division, *People v. Cruz*, 41 A.D.2d 1027, 343 N.Y.S.2d 786 (1st Dep. 1973), and by the New York Court of Appeals, *People v. Cruz*, 34 N.Y.2d 362, 357 N.Y.S.2d 709, 314 N.E.2d 39, *mod.*, 35 N.Y.2d 708, 361 N.Y.S.2d 641, 320 N.E.2d 274 (1974).

▪ In this habeas corpus proceeding, brought under 28 U.S.C. § 2254 (1976), petitioner seeks to set aside his conviction on the grounds that it was obtained in violation of the federal wiretapping statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 *et seq.* (1976), ("Title III") and the Sixth and Fourteenth Amendments to the United States Constitution.[1] Cruz claims that both

---

1. Cruz also moved for leave to amend his habeas corpus petition based upon *Allen v. County Court, Ulster County*, 568 F.2d 998 (2d Cir. 1977), in which the Court of Appeals overturned a state conviction based upon its holding "unconstitutional on its face," *id.* at 999, a New York statutory inference permitting the jury to infer that an illegal weapon found in an automobile is in the possession of any of its occupants. The Supreme Court, however, recently reversed the Second Circuit decision, and held that the relevant New York statute is not unconstitutional on its face. — U.S. —, 99 S.Ct. 2213, 2227, 60 L.Ed.2d 777 (1979). It

is conceivable that Cruz may wish at a later time to make a new motion to amend his petition based upon the Supreme Court's holding. At this time, however, it is inappropriate for this court to make any determinations with respect to this issue, for, as the Supreme Court remarked:

> Although § 2254 authorizes the federal court to entertain respondents' claim that they are being held in custody in violation of the Constitution, it is not a grant of power to decide constitutional questions not necessarily subsumed within that claim. Federal courts are courts of limited jurisdiction. They have the

he and his counsel were subjected to illegal electronic surveillance prior to and during his trial and that the State of New York must affirm or deny the existence of such surveillance. Cruz bases this asserted right to compel the state to respond to his claim on Title III, 18 U.S.C. §§ 2515, 2517(4) (1976), and the Sixth Amendment as incorporated by the Fourteenth Amendment.

Cruz moved on five occasions during his trial and also on appeal to the New York Appellate courts to have the government disclose whether it had engaged in electronic surveillance. He alleged that the prosecuting attorney twice revealed information at trial which could only have been obtained from surveillance.

■ Before reaching the merits of petitioner's claim, this court must consider whether the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), bars the review of petitioner's claims. This court finds that *Stone* does not bar review of Cruz's petition for two reasons. First, the Court in *Stone* limited the availability of habeas corpus relief only for state prisoners who allege violations of their Fourth Amendment rights. Here, by contrast, petitioner's claims arise under Title III and the Sixth Amendment. The carefully restricted holding in *Stone* does not apply to these claims. Second, even assuming that *Stone* were to be applied to petitioner's claims, habeas relief would not be precluded, since petitioner did not receive "an opportunity for full and fair litigation" of his claims in the New York State courts. *Id.*, 428 U.S. at 494, 96 S.Ct. at 3052.

The Supreme Court in *Stone v. Powell* held that Federal habeas corpus relief under 28 U.S.C. § 2254 was not available to state prisoners who allege that evidence was introduced at their trial in violation of the Fourth Amendment exclusionary rule. Concluding that the judicial costs of applying the Fourth Amendment's exclusionary rule in habeas cases outweigh the minimal deterrent effect on unlawful police conduct from applying the rule, the Court held:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id.* at 494, 96 S.Ct. at 3052. The Court carefully restricted its holding to habeas corpus petitions based on the Fourth Amendment. It stated that its decision did not concern "the scope of the habeas corpus statute as authority for litigating constitutional claims generally." *Id.* at 495 n.37, 96 S.Ct. at 3052–3053.

■ The Supreme Court has not extended its *Stone* decision beyond Fourth Amendment habeas claims. It has declined to use the *Stone* standard in adjudicating habeas corpus claims not based on the Fourth Amendment. *See, e. g., Brewer v. Williams*, 420 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Castaneda v. Partida*, 430 U.S. 482 (1977); *Wainwright v. Sykes*, 433 U.S. 72, 87 n.11, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The lower federal courts in this and other circuits have followed the Supreme Court in restricting *Stone* to Fourth Amendment claims. *See, e. g., United States ex rel. Henne v. Fike*, 563 F.2d 809 (7th Cir. 1977), *cert. denied*, 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 766 (1978). They have continued to review claims by habeas corpus petitioners based on violations of the federal wiretapping

authority to adjudicate specific controversies between adverse litigants over which and over whom they have jurisdiction. In the exercise of that authority, they have a duty to decide constitutional questions when necessary to dispose of the litigation before them. But they have an equally strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration. *E. g., New York Transit Authority v. Beazer*, 440 U.S. 568, 573, 99 S.Ct. 1355, 59 L.Ed.2d 587.

*Id.* at 2223. In light of the court's disposition of the issue now before it, it is not necessary to consider Cruz's motion with respect to the constitutional issue.

statute[2] and the Sixth Amendment[3]—the two claims raised by petitioner in this case—as well as double jeopardy,[4] self-incrimination,[5] due process,[6] and cruel and unusual punishment.[7]

Cruz bases his habeas petition on Title III and the Sixth Amendment. Neither of these claims is barred by *Stone v. Powell.* Title III, 18 U.S.C. § 2515 (1976), provides:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

■ Claims based on Title III are independent of Fourth Amendment claims and therefore not subject to the *Stone* decision. *See Losinno v. Henderson,* 420 F.Supp. 380 (S.D.N.Y.1976) (Weinfeld, J.). *See also Alfano v. United States,* 555 F.2d 1128 (2d Cir.

1977), and *Vitello v. Gaughan,* 544 F.2d 17 (1st Cir. 1976), *cert. denied* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977) (deciding Title III based habeas claims without considering the Fourth Amendment or the constraints of *Stone* ). The exclusionary rules of § 2515 and of the Fourth Amendment are different in their origins and purposes. The latter is a judicially created rule designed to protect Fourth Amendment rights and, in particular, to deter future police misconduct. *See Stone, supra,* 428 U.S. at 482, 486, 96 S.Ct. 3037; *United States v. Calandra,* 414 U.S. 338, 347–48, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The judicial origin of the Fourth Amendment exclusionary rule makes it possible for courts to modify the rule, as was done in *Stone.*[8] In contrast, the Title III exclusionary rule was created by Congress as part of a comprehensive scheme of criminal and civil sanctions. Only Congress has the power to change the statutory rule in § 2515. *See Losinno, supra* at 385 n.19.[9]

■■ Under the test enunciated in *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974), a federal statutory claim "which lack[s] a

**2.** *See e. g. Alfano v. United States,* 555 F.2d 1128 (2d Cir. 1977); *Losinno v. Henderson,* 420 F.Supp. 380 (S.D.N.Y.1976).

**3.** *See e. g., Salomon v. LaVallee,* 575 F.2d 1051 (2d Cir. 1978); *Kaplan v. Bombard,* 573 F.2d 708 (2d Cir. 1978).

**4.** *See, e. g., Greene v. Massey,* 546 F.2d 51 (5th Cir. 1977); *Corley v. Cardwell,* 544 F.2d 349 (9th Cir. 1976).

**5.** *See, e. g., Pineda v. Florida,* 564 F.2d 1163 (5th Cir. 1977), *cert. denied,* 436 U.S. 909, 98 S.Ct. 2245, 56 L.Ed.2d 409 (1978); *United States ex rel. Henne v. Fike,* 563 F.2d 809 (7th Cir. 1977), *cert. denied,* 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 776 (1978).

**6.** *See, e. g., Hines v. Auger,* 550 F.2d 1094 (8th Cir. 1977); *United States ex rel. Tirado v. Bombard,* 423 F.Supp. 1245 (S.D.N.Y.1976).

**7.** *See, e. g., Fielding v. LeFevre,* 548 F.2d 1102 (2d Cir. 1977).

**8.** *See* evolution of the exclusionary rule in *Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921) (scope of rule broadly defined); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319

(1920) (rule extended to fruits of illegally seized evidence); *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949) (rule not applied to the states); *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (eroded *Wolf* holding); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (rule held applicable to the states).

The Honorable Henry J. Friendly has observed: "The same authority that empowered the Court to supplement the [fourth] amendment by the exclusionary rule a hundred and twenty-five years after its adoption, likewise allows it to modify that rule as the 'lessons of experience' may teach." *Stone v. Powell,* 428 U.S. 465, 500, 96 S.Ct. 3037, 3055, 49 L.Ed.2d 1067 (Burger, C. J. concurring) (citing *The Bill of Rights as Code of Criminal Procedure,* 53 Calif.L.Rev. 929, 952–953 (1965)).

**9.** For a discussion of the independence of Title III claims and Fourth Amendment claims, *see United States v. Giordano,* 416 U.S. 505, 524, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974); *Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972); *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

constitutional dimension" may be collaterally reviewed if it raises "a fundamental defect which inherently results in a miscarriage of justice" and if it presents "exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent." Petitioner's Title III claim meets this test. The violation that Cruz alleges is absolutely prohibited by § 2515, a key provision of Congress's ambitious wiretapping statute.[10] A conviction based on evidence obtained in violation of that statute is fundamentally defective and results in a miscarriage of justice.

■ Cruz's claim of illegal surveillance also implicates his Sixth Amendment right to the effective assistance of counsel. Illegal electronic surveillance violates a defendant's Sixth Amendment right to counsel whether it involves conversations between the defendant and his lawyer,[11] counsel and third persons,[12] or the defendant and third persons.[13]

■ Cruz claims that the government may have wiretapped additional discussions concerning his defense that he and his counsel had with one another and with third persons. Cruz also has made specific allegations of government wiretapping of conversations between his counsel and third parties.[14] An illegal wiretap of such conversations, including discussions of legal strategy and other confidential matters, constitutes a serious violation of a defendant's right to the effective assistance of counsel. *See United States v. Hoffa*, 387 U.S. 231, 87 S.Ct. 1583, 18 L.Ed.2d 738 (1967).

■ Whereas the Fourth Amendment exclusionary rule is a judicially created prohibition designed to deter police misconduct and is not "a personal constitutional right," *Stone v. Powell, supra* 428 U.S. at 486, 495 n.37, 96 S.Ct. 3037, the Sixth Amendment right to counsel is a critical personal constitutional right that is "indispensable to the fair administration of our adversary system of criminal justice." *Brewer v. Williams, supra*, 420 U.S. at 398, 97 S.Ct. at 1239. *See also United States ex rel. Tyrrell v. Jeffes*, 420 F.Supp. 256, 263 (E.D.Pa.1976), *cert. denied*, 430 U.S. 958, 97 S.Ct. 1606, 51 L.Ed.2d 808 (1977). The possible violation of this constitutional right therefore provides a sound basis for reviewing petitioner's writ.

■ In order to assert violations of Title III and the Sixth Amendment in a section 2254 petition, of course, Cruz must show that he has exhausted his remedies with respect to these claims in the New York State courts. 28 U.S.C. § 2254(b) and (c) (1976); *Preiser v. Rodriguez*, 411 U.S. 475, 477, 489, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Kennedy v. Fogg*, 468 F.Supp. 671 (S.D.N.Y.1979). In the instant case, the exhaustion requirement of section 2254 has been satisfied. As stated below, petitioner repeatedly raised his claim of illegal wiretapping to the trial court and again on appeal. Each of these courts was presented with an opportunity to rule upon the claims that Cruz seeks to present in this court and refused relief. This vigorous assertion by Cruz of his rights is sufficient to meet the exhaustion requirement. As the Supreme Court stated in *Wilwording v. Swenson*, 404 U.S. 249, 250, 92 S.Ct. 407, 408, 409, 30 L.Ed.2d 418 (1971), "Section 2254 does not erect insuperable or

---

**10.** *See, e. g., Gelbard v. United States*, 408 U.S. 41, 50, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972); *cf.* S.Rep. No. 1097, 90th Cong. 2d Sess. 96 (1968) U.S.Code Cong. & Admin.News, p. 2112.

**11.** *See O'Brien v. United States*, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967); *Black v. United States*, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966); *Coplon v. United States*, 89 U.S.App.D.C. 103, 191 F.2d 749 (D.C. Cir. 1951), *cert. denied*, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952).

**12.** *United States v. Hoffa*, 387 U.S. 231, 87 S.Ct. 1583, 18 L.Ed.2d 738 (1967); *Beverly v. United States*, 468 F.2d 732 (5th Cir. 1972).

**13.** *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

**14.** See text following footnote 17 hereof.

successive barriers to the invocation of federal habeas corpus." The Court specified that, "Petitioners are not required to file 'repetitious applications' in state courts." *Id.* (citing *Brown v. Allen*, 344 U.S. 443, 449 n.3, 73 S.Ct. 397, 97 L.Ed. 469 (1965)). *Accord Codispoti v. Howard*, 589 F.2d 135, 140–42 (3d Cir. 1978); *Allen v. County Court of Ulster County*, 568 F.2d 998, 1001–2 (2d Cir. 1977), *rev'd on other grounds,* —— U.S. ——, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

 Even if this court were to assume that Stone is applicable to this case, habeas relief would not be precluded. Under *Stone, supra,* 428 U.S. at 494, 495 n.37, 96 S.Ct. at 3053 n.37, a Federal district court may grant habeas relief if the state has failed to provide "an opportunity for full and fair litigation" of a petitioner's claim. The Court of Appeals in *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977) (en banc), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978), determined that in accordance with the rule set forth in *Stone,* habeas review remained available both where "the state provides no corrective procedures at all to redress Fourth Amendment violations . . ." and where "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process . . ." *Id.* at 840. The Southern District of New York in *United States ex rel. Conroy v. Bombard,* 426 F. Supp. 97, 109 (S.D.N.Y.1976), ruled that habeas relief should be granted when the state does not provide " 'a reasoned method of inquiry into relevant questions of fact and law.' "

Under these standards, the New York courts denied petitioner an opportunity for full and fair litigation of his wiretapping claim. Cruz was prevented from pursuing his illegal wiretapping claim because the state courts refused to order the government to affirm or deny the existence of wiretapping. In addition, the state courts failed to make a reasoned inquiry into Cruz's legal and factual allegations. The trial court refused to reach the claim when Cruz raised it before trial because it was then "premature." The trial court also declined to consider this claim when Cruz moved to vacate his conviction after the trial, assuring only that sufficient facts had been entered into the record to enable an appellate court to decide petitioner's claim. When petitioner sought leave to appeal from the trial court's denial of his motion to vacate, the Appellate Division denied him permission to appeal. *See* Certificate Denying Leave, App.Div. (May 3, 1973) (Capozzoli, J.).

The New York Court of Appeals, in turn, affirmed petitioner's conviction, stating only that while petitioner's claims of eavesdropping were "specific" they were "speculative" and therefore did not require any response from the prosecutor. *People v. Cruz,* 34 N.Y.2d 362, 369, 357 N.Y.S.2d 709, 714, 314 N.E.2d 39, 43 (1974). The court indicated in a footnote that it would have been disposed to remand petitioner's claim for further proceedings if the trial court had not already decided the claim:

> Moreover, we are advised that the allegations of wiretapping of counsel were reasserted in a post judgment motion to vacate the conviction on which the People submitted an affidavit in opposition containing specific denials. The motion to vacate was denied and apparently no appeal was pursued. While we might otherwise be disposed to remand for further proceedings with respect to these allegations, in light of these developments such a course would now be purposeless.

*People v. Cruz,* Slip Op. No. 271, p. 4 (Ct. App.1974). The Court of Appeals apparently believed that the trial court had denied Cruz's motion to vacate by deciding petitioner's wiretap claims on the merits.[15] It

---

**15.** From the above-quoted footnote to the Court of Appeals' decision, it also appears that the court believed that petitioner failed to appeal the trial court's denial of his motion to vacate. In fact, Cruz did attempt an appeal only to have the Appellate Division refuse to hear him. *See* Certificate Denying Leave, App. Div. (Capozzoli, J.) May 3, 1973. Furthermore, the government's denials of wiretapping to which the Court of Appeals refers were ex-

therefore chose not to remand for further proceedings on the merits of petitioner's claim because it appeared that such proceedings had already been held.

Cruz moved for reargument in the Court of Appeals on the ground that the trial court had not, as the Court of Appeals stated, denied petitioner's motion to vacate on the merits, but had based its denial on the assumption that with sufficient facts entered into the record the merits would later be adjudicated on appeal. In response, the Court of Appeals amended its opinion by deleting the footnote explaining only that the deletion would "clarify the basis for . . . [its] holding." *People v. Cruz*, 35 N.Y.2d 708, 361 N.Y.S.2d 641, 320 N.E.2d 274 (1974).

The result of this procedural journey through the state judicial system is that neither the trial nor appellate courts addressed the merits of Cruz's wiretap claim because each believed that the other had done or would do so. Cruz thus became the victim of what his counsel aptly calls a "procedural 'catch–22'." Cruz's opportunity to litigate his claim cannot have been full or fair when he was deprived in this way of a hearing in any court.

The facts of the present case differ from those underlying several Second Circuit decisions in which the court has denied habeas relief because the petitioner had received and taken advantage of an opportunity for full and fair litigation in state courts. *See Simmons v. Clemente*, 552 F.2d 65, 69 (2d Cir. 1977) (habeas relief denied because state judges in deciding a Fourth Amendment claim, had "made comprehensive findings of fact supported by a full record"); *United States ex rel. Conroy v. Bombard*, 426 F.Supp. 97 (S.D.N.Y.1976). In contrast to the cited cases, the state courts in the instant case never conducted a hearing or made findings of fact concerning petitioner's claim of illegal wiretapping. Indeed, petitioner was never given the opportunity to raise his claim of illegal wiretapping because his request that the government affirm or deny the existence of wiretapping was repeatedly denied.[16]

Accordingly, even if Cruz's allegations of illegal wiretapping could be viewed as Fourth Amendment claims, habeas relief would not be precluded by *Stone v. Powell*. In this case, no state court conducted a "reasoned method of inquiry into relevant questions of fact and law." *Conroy, supra* at 109; *cf. Gates, supra* at 843 (Oakes, Circuit Judge, concurring). As in *Bulger v. McClay*, 575 F.2d 407, 410–11 (2d Cir.), *cert. denied*, 439 U.S. 915, 99 S.Ct. 290, 58 L.Ed.2d 263 (1978), petitioner received no "full and fair opportunity" to litigate his claim in the New York courts. The court concludes that it has jurisdiction under 28 U.S.C. § 2254 to adjudicate Cruz's habeas claims.

Turning to the merits of Cruz's claim, this court must decide two issues. First, has Cruz made a sufficient showing of unlawful electronic surveillance as to require the government to affirm or deny the existence of such surveillance? Second, if Cruz has made a sufficient showing, what would constitute an adequate response by the government?

 With respect to the first issue, although a claim based on unsupported suspicions or patently frivolous contentions will not suffice, a "colorable" basis is all

tremely qualified, ambiguous and far from specific. *See* text following footnote 18 hereof.

16. Cruz also did not waive his right to an opportunity for full and fair litigation of his claim. Cruz made allegations of illegal wiretapping on five separate occasions before, during, and after his trial. His case contrasts with several in which the Court of Appeals for the Second Circuit has rejected habeas corpus petitions on the ground that the petitioner had waived his opportunity for full and fair litigation of his claim by failing to object to the introduction of evidence at trial. *See Gates v. Henderson*, 568 F.2d 830 (2d Cir. 1977) (en banc), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978) (failure to object to the introduction of evidence during the trial); *Pulver v. Cunningham*, 562 F.2d 198 (2d Cir. 1977), *LiPuma v. Commissioner, Department of Corrections, State of New York*, 560 F.2d 84 (2d Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977) (failure to move to suppress challenged evidence prior to trial).

that is necessary to compel a response by the government. *See United States v. Yanagita*, 552 F.2d 940, 943 (2d Cir. 1977); *In re Millow*, 529 F.2d 770, 774–75 (2d Cir. 1976). This standard reflects an attempt to balance two competing concerns. On the one hand, it is inherently difficult for a subject of covert surveillance to detect and substantiate the existence of surveillance. On the other hand, each government response to an allegation of wiretapping will entail a delay and disruption of the trial. *See Yanagita, supra*, at 943.[17] In preparing a response, the government will also have to perform the substantial task of searching intelligence records. *Id.*[18]

■ Viewed in light of these considerations, Cruz's showing of surveillance is sufficient to require that his claim be answered by the government. In cross-examining one of Cruz's witnesses during the trial, the prosecutor questioned him about a book which was never mentioned on direct examination and which Cruz's counsel claimed had been discussed on the telephone by him two days earlier. During his summation, the prosecutor referred to the trial testimony of an individual who in fact had never testified at the trial. The individual had allegedly been discussed as a possible defense character witness the day before in a telephone conversation between Cruz's counsel and a third party. Petitioner argues convincingly of the small likelihood that this information discussed by the prosecutor could have come from any source other than a wiretap.

Cruz's allegations are stronger than those made in cases where the Court of Appeals has required the government to affirm or deny that it has engaged in wiretapping. For example, in *United States v. Toscanino*, 500 F.2d 267, 270, 281 (2d Cir. 1974), the defendant made an unsubstantiated and rather farfetched claim that American officials in Uruguay had bribed an employee of the local telephone company to wiretap defendant's phone and that the results of the surveillance had been forwarded to government prosecutors in New York. The court ruled that this allegation was sufficient to trigger the government's obligation to affirm or deny whether it had conducted any wiretapping. *See also United States v. Vielguth*, 502 F.2d 1257 (9th Cir. 1974).

In *In re Millow, supra*, the court held that the defendant had not presented a claim sufficient to require the government to respond. In contrast to Cruz's strong factual showing of surveillance in the present case, the defendant in *Millow* offered only a "patently frivolous contention" and "indicated no factual circumstances from which

17. Most judicial rulings on the subject of the government's duty to affirm or deny a claim of electronic surveillance have occurred in federal criminal cases which, like state cases, are covered by the evidentiary ban set forth in § 2515. Because the principles are identical in federal and state courts, the federal decisions are helpful and important precedent for the instant case, which involves a state criminal defendant.

The obligation of federal prosecutors to affirm or deny claims of electronic surveillance is set forth in 18 U.S.C. § 3504. This section provides in part:

(a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States—

(1) Upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act . . .

Section 3504 does not limit the applicability of prosecutor's duty to federal cases. Indeed, in the present case, the New York courts looked to federal decisions under § 3504 for guidance in establishing standards to govern the adequacy of governmental responses to claims of electronic surveillance. *See People v. Cruz*, 34 N.Y.2d 362, 369–70, 357 N.Y.S.2d 709, 314 N.E.2d 39 (1974).

18. Because of these considerations, this court rejects petitioner's argument that a naked claim of illegal surveillance by a defendant triggers the government's duty to affirm or deny the existence of surveillance. Petitioner bases his argument on a District of Columbia Circuit Court decision, *In re Evans*, 146 U.S.App.D.C. 310, 452 F.2d 1239 (D.C. Cir. 1971), which was cited with approval in dictum by the Second Circuit in *United States v. Toscanino*, 500 F.2d 267, 281 (2d Cir. 1974). This position was rejected as "unsound" in a subsequent Second Circuit opinion, *In re Millow*, 529 F.2d 770, 775 (2d Cir. 1976).

it could be inferred that he was the subject of an illegal wiretap." *Id.* at 774. *See also Matter of Archuleta,* 561 F.2d 1059, 1062 (2d Cir. 1977) ('[s]ome mechanical troubles with a telephone, together with knowledge of a call easily derived from long distance telephone records, is such insubstantial evidence that in most cases it puts no burden on the prosecutor to 'affirm or deny' the existence of wiretapping.")

■ The government's affirmance or denial of illegal wiretapping must be "factual, unambiguous, and unequivocal," *United States v. Alter,* 482 F.2d 1016, 1027 (9th Cir. 1973), and it must be sworn and in writing. *United States v. Toscanino, supra* at 281. It is essential that the government contact appropriate local, state, and federal agencies to determine if any of them have conducted electronic surveillance. *See United States v. Toscanino, supra* at 281; *In re Millow, supra* at 774; *People v. Cruz, supra,* 34 N.Y.2d at 370, 357 N.Y.S.2d 709, 314 N.E.2d 39. The results of this inquiry must be specifically and comprehensively reported and include such information as the "persons contacted . . . [within the agencies] . . ., the substance of the inquires and replies, and the dates of claimed surveillance to which the inquiries were addressed. *People v. Cruz, supra* at 369–70, 357 N.Y.S.2d at 714, 314 N.E.2d at 43. The government's response cannot be conclusory. *United States v. Alter,* 482 F.2d 1016, 1026 (9th Cir. 1973).

In *United States v. Alter, supra,* the court rejected the government's denial of wiretapping, which was based on inquiries made to six federal agencies, because the denial did not meet this standard of specificity. The court stated,

[The prosecutor] speaks in conclusory terms. He supplies no information whatever about the identity of the person or persons with whom he communicated, the substance of his inquiries, or the substance of the replies. He states no facts from which the court could conclude that the six agencies he lists are the only governmental agencies that could have been involved in electronic surveillance.

Nor does the affidavit reveal the dates of claimed surveillance to which the inquiries were addressed. If any of the conclusions in the affidavit were later proved wrong, it would be virtually impossible to establish that the affidavit was perjured. 482 F.2d at 1027.

■ The prosecutor in the instant case denied the existence of wiretapping on two occasions. Both responses fall far short of the rigorous forthrightness that is necessary if § 2515 is to have any efficacy as a safeguard. During the trial, the prosecutor made an unsworn oral denial:

I have nothing—no other statements by the witness on trial [the co-defendant], and nothing of an exculpatory nature of any kind, nor anything derived from any kind of surveillance of the nature [defense counsel] was talking about.

He also submitted a post-conviction affidavit stating:

At no time before or during that trial did I employ any electronic wiretapping or eavesdropping devices of any kind in the office of Barbara Handschu [petitioner's trial counsel] or any other place in order to gather evidence for that case. Additionally, no questions asked of any witness during the trial was [sic] based in any way on information gleaned from any electronic surveillance. Had the situation been otherwise, defense counsel, as required by law, would have been so informed.

The prosecutor's first denial provides far less information than his second, and does not satisfy the requirement of being sworn and in writing.[19] Therefore, we need only examine the second denial.

The post-conviction affidavit states only that the prosecutor did not personally conduct surveillance. It does not begin to indicate whether the records of any agency were examined to determine if petitioner was wiretapped. It therefore neither denies that any other governmental official engaged in any wiretapping nor that the prosecutor's information came from surveillance by federal, state or local law enforcement agencies. If the prosecutor did not

19. *See United States v. Toscanino, supra* at 281.

make inquiries to government agencies, he is in no position to assert that his questions at trial were not based on information obtained from electronic surveillance. For instance, the prosecutor could not deny that the "police information," on which the prosecutor claimed many of his trial questions were based, was obtained by electronic surveillance.

The affidavit is fraught with what petitioner's counsel calls "negative pregnancy." While stating, "At no time did I employ . . .," the prosecutor does not deny that his agents may have conducted surveillance on his behalf. Further, the prosecutor denies having wiretapped only "in order to gather evidence for" the case. He leaves unanswered the question of whether surveillance was conducted for some other purpose.

The prosecutor's response is more conclusory than the government affidavit that was rejected in *United States v. Alter, supra.*[20] The latter at least stated that inquiries had been made to six federal agencies. *Id.* at 1027. The lack of clarity in the prosecutor's affidavit here is similar to that in the prosecutor's response in *United States v. Vielguth, supra,* where Judge Chambers, dissenting on a different issue, stated: " . . . [T]he response was insufficient. The affidavits are replete with the statement, 'To my knowledge.' That, to me, is an obfuscation carrying with it all of the clarity of that pitiful phrase, 'and/or', so prevalent in the 1930's." *Id.* at 1261.

In sum, instead of being forthright and unequivocal, the prosecutor's denial was qualified and conditional. The government must make a better effort.[21]

It is therefore ordered, pursuant to Rule 7 of the Rules Governing Habeas Corpus Cases, 28 U.S.C. § 2254 that within 90 days the respondent expand the record in this proceeding by submitting to this court by affidavit the results of a written inquiry made to appropriate officials responsible for keeping electronic surveillance records for each of the Federal Agencies listed below. This inquiry is to disclose whether there has been at any time any electronic surveillance of any conversations of petitioner, of any premises in which the petitioner has claimed an interest, and of petitioner's attorneys during the period of the attorneys' representation of petitioner.

The inquiry is to be directed to the Federal Bureau of Investigation, the Central Intelligence Agency, the United States Secret Service, the Internal Revenue Service, the Bureau of Alcohol, Tobacco and Firearms, the United States Customs Service, the Drug Enforcement Administration, the United States Postal Service, and any other federal, state or local agency, such as the New York Police Department, if there is reason to believe that it may have been involved.

---

20. *See* discussion in text, *supra.*

21. The government has cited a number of cases for the proposition that the specificity required in a prosecutor's response will vary with the specificity of the defendant's claim of surveillance. *See, e. g. United States v. See,* 505 F.2d 845, 856 (9th Cir. 1974), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975).

If this "fluid" standard were applied in the present case it, would have no effect on the outcome. Petitioner's showing of surveillance is strong enough to satisfy the standard set forth in *United States v. Alter,* 482 F.2d 1016, 1026 (9th Cir. 1973), which requires far more of a showing than is required in Second Circuit decisions or any other cases that have been brought to this court's attention.