**Eduardo CRUZ, Petitioner,**

**v.**

**Robert ALEXANDER and Edward Hammock, Chairman of the New York State Department of Parole, Respondents.**

No. 77 Civ. 5976 (RWS).

United States District Court,
S. D. New York.

Oct. 3, 1980.

Center for Constitutional Rights, New York City, for petitioner; John Antonio Lugo, Rhonda Copelon, New York City, of counsel.

Robert Abrams, Atty. Gen. of N. Y., New York City, for respondents; Tyrone M. Powell, New York City, of counsel.

## OPINION AND ORDER

SWEET, District Judge.

Eduardo Cruz was convicted in New York Supreme Court of possession of explosive substances in 1971. He was sentenced to a term of seven years imprisonment. That conviction was affirmed by the Appellate Division, *People v. Cruz*, 41 A.D.2d 1027, 343 N.Y.S.2d 786 (1st Dep't 1973), and by the New York Court of Appeals, *People v. Cruz*, 34 N.Y.2d 362, 357 N.Y.S.2d 709, 314 N.E.2d 39, *mod.*, 35 N.Y.2d 708, 361 N.Y. S.2d 641, 320 N.E.2d 274 (1974). In 1977, he petitioned this court for a writ of habeas corpus, under 28 U.S.C. § 2254 (1976), basing his attack upon his state conviction on an alleged violation of the federal wiretapping statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 *et seq.* (1976) ("Title III"), and of his rights under the Sixth and Fourteenth Amendments to the United States Constitution. The intervening years have been taken up with a slow but substantial crossfire of affidavits, exhibits, and correspondence, including numerous requests for extensions of time by the state defendant, the most recent of which was filed only the week before last. That request, based on pure speculation as to what further investigation might yield at this late date, is denied.

The petition itself is granted.

The factual background is largely set forth in the opinion of this court dated September 12, 1979, and published at 477 F.Supp. 516 (S.D.N.Y.1979), *appeal dismissed mem.*, 622 F.2d 573 (2d Cir. 1980). It will be chronicled only briefly here.

During Cruz's trial, the Assistant District Attorney who handled the case, John Fine, twice referred to matters knowledge of which, Cruz contended then as he contends today, Fine could only have acquired, whether directly or indirectly, through electronic surveillance. As explained in my prior opinion:

> In cross-examining one of Cruz's witnesses during the trial, the prosecutor questioned him about a book which was never mentioned on direct examination and which Cruz's counsel claimed had been discussed on the telephone by him two days earlier. During his summation, the prosecutor referred to the trial testimony of an individual who in fact had never testified at the trial. The individual had allegedly been discussed as a possible defense character witness the day before in a telephone conversation between Cruz's counsel and a third party.

*Id.* at 524.

At trial and since, Cruz has argued convincingly that there was little "likelihood that this information discussed by the prosecutor could have come from any source other than a wiretap." *Id.* Nonetheless, the trial court and two levels of state appellate courts refused to compel the state to make the showing required by 18 U.S.C. § 3504, which applies to the state as well as to the federal government,[1] that Cruz had not been the subject of illegal electronic surveillance. At trial, the court ruled that petitioner's claim was premature. Postconviction, the court failed to reach the merits of Cruz's wiretap claim, and concerned itself only with allowing counsel to build a record on which an appellate court could rule. On appeal, the Court of Appeals concluded that the trial court had reached the merits of petitioner's claim, and therefore declined to remand the case for further proceedings.[2]

At the time of my last decision in this matter, I had before me two statements by the Assistant District Attorney on the subject of wiretapping in Mr. Cruz's case. The first, an unsworn oral denial made during the trial, is as follows:

---

1. *See Cruz v. Alexander*, 477 F.Supp. 516, 524 n.17 (S.D.N.Y.1976).

2. The Court of Appeals later amended its opinion by deleting the footnote in which this conclusion had been stated, but did not otherwise correct the error.

I have nothing—no other statements by the witness on trial [the co-defendant], and nothing of an exculpatory nature of any kind, nor anything derived from any kind of surveillance of the nature [defense counsel] was talking about.

The second was a post-conviction affidavit stating:

At no time before or during that trial did I employ any electronic wiretapping or eavesdropping devices of any kind in the office of Barbara Handschu [petitioner's trial counsel] or any other place in order to gather evidence for that case. Additionally, no questions asked of any witness during the trial was [sic] based in any way on information gleaned from any electronic surveillance. Had the situation been otherwise, defense counsel, as required by law, would have been so informed.

In addition to failing to satisfy the requirement of being sworn and in writing, the first statement was uninformative. The second, which I analyzed in some detail in my previous opinion, satisfied the requirements of being sworn and in writing, but was nonetheless barely more useful than the first, laden as it was with ambiguities and negative pregnants. I concluded that it was legally insufficient to overcome what I deem to be Cruz's strong showing of the likelihood of electronic surveillance in his case.

I ordered the state to make a better effort. Specifically, I ordered that

the respondent expand the record in this proceeding by submitting to this court *by affidavit* the results of a written inquiry made to appropriate officials responsible for keeping electronic surveillance records for each of the Federal Agencies listed below. This inquiry is to disclose whether there has been at any time any electronic surveillance of any conversations of petitioner, of any premises in

which the petitioner has claimed an interest, and of petitioner's attorneys during the period of the attorneys' representation of petitioner.

The inquiry is to be directed to the Federal Bureau of Investigation, the Central Intelligence Agency, the United States Secret Service, the Internal Revenue Service, the Bureau of Alcohol, Tobacco and Firearms, the United States Customs Service, the Drug Enforcement Administration, the United States Postal Service, and any other federal, state or local agency, such as the New York Police Department, if there is reason to believe that it may have been involved. [Emphasis added].

More than a year has passed since that order was entered. In response to it, the state has submitted an affidavit by Tyrone Mark Powell, the Assistant Attorney General handling this habeas action. In that affidavit, Powell reargues the legal sufficiency of the affidavits already found inadequate, then lists eleven federal, state and local law enforcement agencies contacted by the state in response to the order of this court.[3] The affidavit recites that each of these agencies was requested to search its records to determine whether there had been "electronic surveillance of any conversations of petitioner, of any premises in which the petitioner has claimed an interest, and of petitioner's attorneys during the period of the attorneys' representation of petitioner." [4] It concludes by asserting that, based on the responses to the state's inquiry

and the affidavit of John Fine, Esq., there has *never* been any electronic surveillance of any conversations of petitioner, of any premises in which petitioner has claimed an interest, and of petitioner's attorneys during the period of the ... attorneys' representation of petition-

---

**3.** Powell also reiterates his claim that the petition is barred by *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). That contention was rejected in the opinion dated September 12, 1979; for the reasons set forth in that opinion, it is rejected once again.

**4.** Petitioner supplied respondent with a list of names, addresses, and phone numbers of himself, his close associates, and his attorneys, as well as the dates relevant to this investigation. The state's inquiry was guided by this compilation.

er; moreover, at no time before or during the trial of petitioner did John Fine, the prosecutor, employ any electronic wiretapping or eavesdropping devices of any kind in the office of Barbara Handschu or in any other place in order to gather evidence for that case; no questions asked of any witness during that trial was [sic] based in any way on information gleaned from any electronic surveillance.

In addition to this affidavit, the state submitted an additional affidavit signed by Mr. Powell that is materially indistinguishable from the one just outlined, along with copies of its letters of inquiry and of the agencies' responses.

■ Cruz's already substantial showing was strengthened still further on June 20 of this year when, at a hearing held on this petition, he produced an F.B.I. internal memorandum that raises a strong inference of wiretapping. That document, dated June 17, 1971, reads in pertinent part, as follows:

On 7/16/79, _____ source, advised on the above date EDWARD CRUZ, City College of New York, telephone 254–6613, was in contact with BLANCA at the Black Panther Party (BPP) office, 2026 7th Avenue, New York. CRUZ stated he had something important to discuss, but did not wish to do it over the telephone. He requested that someone from the Panther office meet him that evening at the Diplomat Hotel. CRUZ described himself as 5′6″ tall, on the stout side and having a beard like CASTRO. BLANCA stated CRUZ will be recontacted. No further information was developed regarding CRUZ's contact with the BPP.

The 1971 Cole's Cross Reference Directory lists telephone 254–6613 to ROBERT CRUZ (brother of subject), 87 Columbia Street, New York. It is noted that the City College of New York records reflect subject resided at 87–89 Columbia Street during 1969.

Even without this memorandum, petitioner's showing amply supported his demand under § 3504 for a response from the government. Although the memorandum does not incontrovertably establish that electronic surveillance was engaged in, it adds considerable weight to an already substantial claim.

■ Given the nature of this evidence and the issue presented, I conclude that a further testimonial hearing is not required. The question for decision is straightforward. It is whether the affidavit of John Fine, by itself insufficient, the affidavits of Tyrone Mark Powell, who apparently has no first hand knowledge of the facts of this case, and the correspondence between the Attorney General's office and the contacted agencies, taken together, constitute a legally sufficient showing of the absence of electronic surveillance to overcome the contrary showing made by petitioner Cruz. I find that they do not and indeed that they fail to raise any factual issues requiring a further hearing.

The original affidavit by the Assistant District Attorney was analyzed in my opinion in this case filed on September 12, 1979. There is no reason to reiterate that discussion here. Only its conclusion needs to be restated: the affidavit of the prosecutor was and is legally inadequate.

■ The sufficiency of the supplementary submissions by Mr. Powell and the various government agencies that he contacted must be evaluated through reference to 18 U.S.C. § 3504 and the cases decided thereunder. 18 U.S.C. § 3504 speaks only in terms of the government's duty to "affirm or deny" the occurrence of illegal electronic surveillance, without specifying who is to affirm or deny or specifically requiring that that affirmance or denial be in affidavit form. Nonetheless, the rule in this Circuit and elsewhere is that § 3504 can only be satisfied by affidavits. *See In re Millow*, 529 F.2d 770, 774 (2d Cir. 1976) ("Once a substantial claim is made under the statute, those government agencies closest to the investigation must scrupulously search their files and submit affidavits affirming or denying the validity of the aggrieved party's claim and indicating which agencies have been checked.") *See also In re Buscaglia*,

518 F.2d 77, 79 (2d Cir. 1975); *United States v. Toscanino*, 500 F.2d 267, 281 (2d Cir. 1974); *Korman v. United States*, 486 F.2d 926, 931 (7th Cir. 1973). Furthermore, those affidavits must be sworn to by one "who speaks with knowledge of the facts and circumstances," *see Matter of Grand Jury*, 524 F.2d 209, 216 (10th Cir. 1975); *cert. dismissed*, 425 U.S. 927, 96 S.Ct. 1526, 48 L.Ed.2d 170 (1976); *see also United States v. Alter*, 482 F.2d 1016, 1027 (9th Cir. 1973). These two requirements together are intended to ensure that the government's response is as informed and truthful as possible. By insisting on sworn submissions from those with first hand knowledge, and thereby subjecting affiants to the possibility of perjury prosecutions, the courts have put teeth into § 3504. *See generally id.* (rejecting affidavit from Department of Justice attorney who polled federal agencies but had no first hand knowledge because "if any of the conclusions in the affidavit were later proved wrong, it would be virtually impossible to establish that the affidavit was perjured.")

 Judged by this standard, neither the affidavits submitted by Mr. Powell nor the letters from federal agencies written in response to his inquiries, nor, indeed, all these submissions taken together, add anything of legal weight to the prior statements by the Assistant District Attorney. The affidavits submitted in opposition to the petition, based as they are only on information and belief, do not satisfy the requirements outlined above. No agency responded by affidavit to Mr. Powell's inquiry, and so there is no sworn statement before this court from any agent involved either in the investigation of Cruz's original case or in the record search performed in connection with his habeas petition. *Compare Matter of Archuleta*, 561 F.2d 1059, 1062 (2d Cir. 1977) (government produced affidavits from the Assistant United States Attorney and the F.B.I. agents in charge of the investigation, federal agents in Chicago who had investigated related crimes, and the person in charge of records of electronic surveillance maintained by the F.B.I. in Washington); *In re Buscaglia, supra* (affidavits submitted by two government attorneys with first hand knowledge of the case and by investigating and record-keeping F.B.I. agents); *United States v. D'Andrea*, 495 F.2d 1170 (3d Cir. 1974) (government submission included affidavits from the prosecutor in charge and the seven investigators who had been involved in the case).

In short, the Assistant District Attorney's statements are inadequate for the reasons detailed in my last opinion; the affidavits in opposition, though sworn, are inadequate because they are not based on first hand knowledge; the agencies' responses are inadequate because they are not in affidavit form. The government has attempted to meet the requirements of § 3504 by combining legally deficient submissions, in the apparent hope that some alchemical process will produce a legally sufficient end-product. That attempt to circumvent the statutory mandate has failed. As the Tenth Circuit has remarked in reference to § 3504: "This is no place for ambivalent statements or loopholes", *see Matter of Grand Jury, supra.*

Because of the government's failure to comply with § 3504, the petition for a writ of habeas corpus is hereby granted.

IT IS SO ORDERED.