Eduardo CRUZ, Petitioner-Appellee,

v.

Robert ALEXANDER and Edward Hammock, Chairman of the New York State Department of Parole, Respondents-Appellants.

No. 79, Docket 80–2329.

United States Court of Appeals,
Second Circuit.

Argued Oct. 26, 1981.
Decided Jan. 22, 1982.

See also, 2 Cir., 622 F.2d 573 and, D.C., 477 F.Supp. 516.

Tyrone Mark Powell, Asst. Atty. Gen. of the State of N. Y., New York City (Robert Abrams, Atty. Gen. of the State of N. Y., New York City, on the brief), for respondents-appellants.

Jose Antonio Lugo, New York City (Rhonda Copelon, Margaret L. Ratner, and the Center for Constitutional Rights, New York City, on the brief), for petitioner-appellee.

Before FEINBERG, Chief Judge, and MANSFIELD and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

This appeal, arising in the context of a habeas corpus attack upon a state conviction, concerns the adequacy of a prosecutor's denial of a criminal defendant's claim that his conviction resulted from electronic surveillance in violation of 18 U.S.C. § 2515 (1976). On a petition for a writ of habeas corpus challenging a New York conviction, the District Court for the Southern District of New York (Robert W. Sweet, Judge) ruled that a state prosecutor's duty to affirm or deny a colorable claim of wiretapping is governed by 18 U.S.C. § 3504 (1976) and concluded that the state had failed to meet its obligation to respond to the petitioner's claim. Judge Sweet rested his conclusion primarily on the fact that written statements obtained from various state and federal agencies, which denied that they had engaged in any surveillance of the petitioner, were in the form of letters from those agencies rather than sworn affidavits. The District Court granted the relief sought by the petitioner, ordering his conviction vacated and his indictment dismissed. Because we do not agree that § 3504 applies to state prosecutors and because we are satisfied that the state's denial of wiretapping contains no deficiency cognizable on federal collateral attack, we reverse the order of the District Court and reinstate the petitioner's conviction.

In 1971 Eduardo Cruz was convicted in the New York Supreme Court for possessing explosive substances. His conviction was affirmed by the New York appellate courts, *People v. Cruz*, 41 A.D.2d 1027, 343 N.Y.S.2d 786 (1st Dep't 1973), *aff'd*, 34 N.Y.2d 362, 314 N.E.2d 39, 357 N.Y.S.2d 709, *modified*, 35 N.Y.2d 708, 320 N.E.2d 274, 361 N.Y.S.2d 641 (1974). Cruz's subsequent petition for federal habeas corpus relief attacked the conviction on the ground that it was obtained in violation of the federal wiretap statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.* (1976) ("Title III"), and the Sixth and Fourteenth Amendments. Cruz alleged that both he and his attorney were the subjects of illegal electronic eavesdropping before and during his trial and that evidence obtained from that surveillance was used against him in violation of 18 U.S.C. § 2515; he claimed that despite these allegations and the evidence offered in support of them,[1] the state had failed to make an adequate response confirming or denying surveillance, which he contended is required by 18 U.S.C. § 3504. Cruz also claimed that the alleged surveillance interfered with his right to the effective assistance of counsel in violation of 18 U.S.C. § 2517(4) and the Sixth Amendment.

In September 1979, the District Court made an initial ruling on Cruz's petition. *Cruz v. Alexander*, 477 F.Supp. 516 (S.D.N.Y.1979), *appeal dismissed as interlocutory*, 622 F.2d 573 (2d Cir. 1980). Judge Sweet held that § 3504 applies to state prosecutors, both because the statute, in his view, is not limited to federal cases, and because the New York Court of Appeals, in affirming Cruz's conviction, *People v. Cruz*, 34 N.Y.2d 362, 369–70, 314 N.E.2d 39, 43, 357 N.Y.S.2d 709, 714, *modified*, 35 N.Y.2d 708, 320 N.E.2d 274, 361 N.Y.S.2d 641 (1974), had looked to federal decisions construing § 3504 in order to formulate standards for state prosecutors. *Cruz v. Alexander, supra*, 477 F.Supp. at 524 n.17. Applying § 3504, Judge Sweet concluded that petitioner had made a sufficient showing of

---

1. Cruz's claim was based principally on two incidents at trial in which the prosecutor referred to information that, Cruz alleges, the prosecutor could not have known about unless there had been a wiretap. In the first incident, the prosecutor questioned a defense witness on cross-examination about an underground publication entitled "The Anarchist's Cookbook"; Cruz claims that the book is obscure and was never mentioned in any testimony, but had been discussed by his counsel on the telephone a few days before. In the more telling second incident, the prosecutor referred in his summation to the testimony of "Sister Anne Marie," whom he identified as a defense character witness. However, no such person had ever testified or been referred to at the trial, and Cruz claims that the only time her name had been mentioned was in a telephone conversation the previous day between his counsel and another witness.

surveillance to require the state to answer his claim, but that the state's responses were qualified and incomplete, falling far short of the "rigorous forthrightness" necessary to effectuate the statutory purpose. Judge Sweet accordingly ordered that within ninety days the state expand the record "by submitting to this court by affidavit the results of a written inquiry" to specified state and federal agencies that might have been involved in surveillance of Cruz. *Id.* at 526.

Assistant Attorney General Powell then sent written inquiries to eleven federal, state, and local law enforcement agencies, enclosing a copy of Judge Sweet's September 1979 order and opinion, and asking them to search their electronic surveillance records to determine if they had "at any time conducted any electronic surveillance of any conversations of petitioner Eduardo Cruz, of any premises in which the petitioner has claimed an interest, and of petitioner's attorneys during the period of the attorneys' representation of petitioner." These inquiries included a list, supplied by petitioner, of the names, addresses, and telephone numbers of Cruz, his associates, and his attorneys, and the dates relevant to the investigation. In June 1980, after several requests for extensions of time, the state submitted to the District Court an affidavit from Assistant Attorney General Powell detailing the procedures the state had followed and attaching copies of the letters of inquiry, the list of people contacted at the agencies, and copies of the responses. All this material uniformly denied any surveillance of Cruz, his counsel, or his associates. In October 1980 Judge Sweet ruled that

these most recent responses also failed to comply with § 3504: the affiant did not have first-hand knowledge of whether eavesdropping had occurred, and the agency responses were by letter, not affidavit. Concluding that the state's efforts were legally insufficient to overcome Cruz's showing of electronic surveillance and that no purpose would be served by further hearings, Judge Sweet vacated petitioner's conviction and dismissed the indictment. *Cruz v. Alexander*, 509 F.Supp. 640, 644 (S.D.N.Y.1980). From that ruling the state appeals.[2]

The development of electronic surveillance technology raised the spectre of widespread interception of private communications by unseen auditors. In response to this danger, Congress in 1968 enacted Title III of the Omnibus Crime Control and Safe Streets Act, Pub.L.No.90–351, Tit. III, § 802, 82 Stat. 212, which places strict limits on the use of electronic surveillance. *See generally* S.Rep.No.1097, 90th Cong., 2d Sess. 66–76, *reprinted in* [1968] U.S.Code Cong. & Ad.News 2112, 2153–63. In addition to its substantive provisions, Title III includes an implementing exclusionary rule, 18 U.S.C. § 2515, which bars from federal and state courts conversations intercepted by unauthorized wiretapping and evidence derived from such wiretapping.

■ After enacting Title III, Congress recognized that victims of illegal wiretapping may have grounds to suspect, but will have difficulty proving, that wiretapping has occurred. Congress therefore provided that upon a claim by a "party aggrieved" that wiretap evidence is being offered

---

2. As it did unsuccessfully in the District Court, the state argues preliminarily that the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), bars review of the merits of petitioner's claim. The District Court found, after a comprehensive review of the relevant law, that *Stone v. Powell* presented no bar to review because (1) that decision's limit on the availability of habeas relief for state prisoners was carefully restricted to cases where violations of Fourth Amendment rights were alleged, whereas Cruz's claims were based on the Sixth Amendment and on Title III, which, although similar in

operation to the Fourth Amendment's exclusionary rule, is independent in origin and purpose; and (2) in any event, the New York courts had not provided the opportunity for full and fair litigation of petitioner's claim specified by *Stone v. Powell. Cruz v. Alexander*, 477 F.Supp. 516, 519–23 (S.D.N.Y.1979), *appeal dismissed as interlocutory*, 622 F.2d 573 (2d Cir. 1980). Since the district judge ruled on the merits of the important issue before us and committed error, we believe that we should reach the merits as well. We express no view on the preliminary issues decided by the court below.

against him, the "opponent" of the claim must "affirm or deny" whether unlawful wiretapping occurred. Pub.L.No.91–452, Tit. VII, § 702(a), 84 Stat. 935 (1970), *codified at* 18 U.S.C. § 3504(a)(1) (1976). Section 3504(a) specifies that the "affirm or deny"' obligation applies "[i]n any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States." While the phrases "any trial" and "any court," viewed in isolation, might be thought to include state courts, it is clear that § 3504 applies only to federal proceedings. First, the reference to "other authority of the United States" strongly implies that all of the preceding entities in the list are federal. Second, this meaning is evident from a comparison of § 3504 with § 2515, which makes Title III's exclusionary rule applicable to "any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, *a State,* or a political subdivision thereof." (Emphasis added). Finally, the House Report explicitly states, "This section [3504] applies only to trials and other proceedings conducted under the authority of the United States." H.Rep.No.1549, 91st Cong., 2d Sess. 51, *reprinted in* [1970] U.S. Code Cong. & Ad.News 4007, 4027. *See also id.* at 4009. The District Court therefore erred in assessing the adequacy of the state prosecutor's denial of wiretapping against the standards of § 3504,[3] as construed in federal proceedings such as *United States v. Yanagita,* 552 F.2d 940 (2d Cir. 1977), *In re Millow,* 529 F.2d 770 (2d Cir. 1976), *United States v. Toscanino,* 500 F.2d 267 (2d Cir. 1974), and *United States v. Alter,* 482 F.2d 1016 (9th Cir. 1973).

■■■ The elimination of this ground of the District Court's decision alters but does not necessarily eliminate the issue Judge Sweet resolved in granting habeas corpus relief—namely, the adequacy of the state prosecutor's denial of wiretapping. Before reaching the merits of that issue, we must briefly examine its availability as a ground for habeas corpus attack upon a state court conviction. Habeas corpus relief is available to a state prisoner in custody in violation of the Constitution or "laws" of the United States, 28 U.S.C. §§ 2241(c)(3), 2254(a). Since statutory violations are infrequently asserted by habeas petitioners, few cases have considered the type of statutory claims that might be cognizable on federal collateral attack of state court convictions. *See United States ex rel. Esola v. Groomes,* 520 F.2d 830 (3d Cir. 1975); *Losinno v. Henderson,* 420 F.Supp. 380 (S.D.N.Y. 1976). In this case, we will assume that a state court conviction obtained in violation of the Congressionally mandated exclusionary rule of § 2515 would be vulnerable to habeas corpus attack. *See Losinno v. Henderson, supra.*[4] That assumption would not entitle Cruz to relief on these facts because there has been no determination that wiretapping occurred, much less that evidence significant to his conviction resulted from it. Cruz's claim requires us to make the more doubtful further assumption that § 2515 implies some mandatory assistance to the state court defendant in meeting his burden to come forward with evidence that wiretapping occurred, assistance akin to the § 3504 procedure available to federal court

**3.** Section 3504 applies to claims of wiretapping alleged to have tainted federal proceedings, not to denials in federal proceedings of claims that state proceedings were tainted. Petitioner therefore cannot benefit from § 3504, after unsuccessfully claiming in the state courts that his conviction was unlawfully based upon wiretapping, simply by renewing his claim in a federal district court pursuant to 28 U.S.C. § 2254. The habeas court is assessing, under narrow standards, the validity of the state court conviction, and since the state prosecutor

was not bound by § 3504 in the state court proceeding, he does not become subject to it when petitioner renews his claim in a federal forum.

**4.** In *Losinno,* Judge Weinfeld held that *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), does not bar a federal habeas court from considering serious violations of § 2515 because this exclusionary rule was prescribed by Congress.

defendants,[5] and the equally doubtful further assumption that inadequate denial of wiretapping permits federal collateral attack upon a state conviction. Even if we made these additional assumptions, Cruz would not be entitled to relief because the state prosecutor's denial of wiretapping was not deficient even under the standards of § 3504.

Section 3504 requires that an aggrieved party articulate a "colorable" basis for his claim of surveillance in order to put the government to the task of responding. *United States v. Yanagita, supra,* 552 F.2d at 943; *In re Millow, supra,* 529 F.2d at 774. Once that party's burden is met, however, the government must make a "factual, unambiguous, and unequivocal" response, *United States v. Alter, supra,* 482 F.2d at 1027. In this Circuit, that response from the prosecutor normally must be made by affidavit or sworn testimony, *see In re Millow, supra,* 529 F.2d at 774; *United States v. Toscanino, supra,* 500 F.2d at 281, and often must include the results of inquiry of appropriate agencies to determine if they have conducted surveillance of the complaining party, *see United States v. Grusse,* 515 F.2d 157, 159 (2d Cir. 1975) (Lumbard, J. concurring); *United States v. Toscanino, supra,* 500 F.2d at 281.

However, this Circuit has not required that the responses from the agencies must themselves be in affidavit form, and we decline to do so now. In *United States v. Toscanino, supra,* we said that the prosecutor must "put his oral denial of the allegation in affidavit form, indicating which federal agencies [have] been checked." *Id.* at 281. In *United States v. Grusse, supra,* we accepted the prosecutor's sworn statement that he had checked with the FBI; Judge Oakes, dissenting on the ground that more than one agency should have been contacted, stated that the prosecution must present "an affidavit evidencing the fact that [it] was reasonably diligent in its search" for wiretaps, *id.* at 160. No member of the panel required the responses to the prosecutor's inquiry to be in affidavit form. And in *In re Millow, supra,* we said that "those government agencies closest to the investigation must scrupulously search their files and submit affidavits affirming or denying the validity of the aggrieved party's claim and indicating which federal agencies have been checked." *Id.* at 774. These cases require that the prosecutor or the primary investigating agency submit an affidavit, but impose no affidavit requirement upon the various agencies responding to a request to check their records.[6] We are satisfied that responses to such requests, signed by responsible officials with obvious awareness that their replies are to be submitted in court proceedings, suffice to permit a court to determine compliance with § 3504. Since there is no dispute that the New York prosecutor made an adequate inquiry, his sworn response, with its enclosures, would have satisfied § 3504, if it were applicable;

---

**5.** In affirming Cruz's conviction, the New York Court of Appeals outlined "pertinent guidelines" for use by New York courts in assessing claims of unlawful wiretapping. 34 N.Y.2d at 369–70, 314 N.E.2d at 43, 357 N.Y.S.2d at 714–15; *see also People v. Grieco,* 94 Misc.2d 1043, 406 N.Y.S.2d 426 (N.Y.Crim.Ct.), *aff'd,* 98 Misc.2d 310, 413 N.Y.S.2d 821 (App.Term 1978). These state law guidelines, as Judge Sweet noted, approximate the standards federal courts have announced in applying § 3504.

**6.** *Grusse* and *Millow* arose in response to claims by grand jury witnesses that the government had relied on electronic surveillance to gather information used in formulating the questions asked them. It has been suggested that the balance between privacy rights and the interest in expeditious investigation may be more favorable to the government, specifically with regard to the required scope of § 3504 inquiries, where the relevant rights are those of grand jury witnesses than where, as here, the rights of a criminal defendant are at stake. *See United States v. Grusse,* 515 F.2d 157, 159 & n.1 (2d Cir. 1975) (Lumbard, J., concurring); *In re Mintzer,* 511 F.2d 471, 472–73 & n.2 (1st Cir. 1974). Even if the different interests affect the *scope* of the government inquiry that is required, however, they do not affect the requisite standard of *believability* of the information collected. In the latter regard, we think that the grand jury cases use the same standard that is applicable in criminal trials. If the prosecutor's affidavit, together with evidence of reasonable diligence and specific responses from the appropriate agencies, is sufficient in the one setting, it is sufficient in the other.

*a fortiori* it satisfied whatever lesser requirement might arguably be inferred from the provisions of § 2515.[7]

The District Court's decision upholding petitioner's claim of violation of both Title III and the Sixth Amendment was premised on its conclusion that the State's denial of wiretapping was deficient. Since we reject that premise, we reverse the judgment of the District Court and order reinstatement of petitioner's conviction.

---

7. The prosecutor's response was not only adequate as a matter of law; it was also sufficient to comply with the terms of Judge Sweet's order. The order required the state to "submit[ ] to this court by affidavit the results of a written inquiry" to appropriate agencies. The terms of the order, especially when read in the context of the relevant cases, require only that the submission of results to the court be made under oath, not that each item of information on which the submission was based itself appear in affidavit form.