**Eduardo CRUZ,**

v.

**Robert ALEXANDER, et al.**

**Nos. 79, 613, Dockets 82–2329, 82–3075.**

United States Court of Appeals, Second Circuit.

Finally Submitted March 11, 1983.

Decided May 2, 1983.

Mansfield, Circuit Judge, dissented and filed opinion.

Rhonda Copelon, Jose Antonio Lugo, New York City, submitted briefs for habeas corpus petitioner.

Robert Abrams, Atty. Gen., Gerald J. Ryan and Tyrone Mark Powell, Asst. Attys. Gen., New York City, submitted briefs for habeas corpus respondents.

Before FEINBERG, Chief Judge, and MANSFIELD and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

Our January 22, 1982, decision in *Cruz v. Alexander*, 669 F.2d 872 (2d Cir.), *cert. denied*, —— U.S. ——, 103 S.Ct. 99, 74 L.Ed.2d 89 (1982), has provoked uncertainty in the minds of the parties as to the nature of proceedings contemplated after we reversed a habeas corpus judgment of the District Court for the Southern District of New York, 509 F.Supp. 640 (Robert W. Sweet, Judge) that had vacated a state court's judgment of conviction. The uncertainty has been brought to our attention by motions filed by both sides. We have concluded that our prior opinion should be clarified and augmented to resolve at this time the issue of the adequacy and conclusiveness of state court fact-finding, an issue we had previously left unresolved. With that issue resolved, we now direct that the habeas corpus petition be dismissed.

The contentions now before us require examination of the unfortunately protracted history of this litigation as it moved through the state and federal courts. Cruz was convicted in 1971 in the New York Supreme Court of possession of explosive substances. Prior to trial he claimed that he had been the victim of illegal wiretapping. That claim was rejected as "premature." During the trial, Cruz renewed his claim, relying on two incidents that occurred at the trial. First, during cross-examination of a defense witness the prosecutor asked a question concerning "The Anarchist's Cookbook." Cruz alleges that this book had not been mentioned in any testimony, but had been mentioned by his counsel in a telephone conversation with a defense expert two days earlier. Second, during summation the prosecutor referred to the testimony of Sister Anne Marie, whom he identified as a defense character witness. Cruz claimed that no such person had testified or been referred to at trial, but that her name had been mentioned as a possible character witness in a telephone conversation the previous day between his counsel and a third party. The state trial judge did not call upon the prosecution to affirm or deny wiretapping; however, the prosecutor stated that he had "nothing . . . derived from any kind of surveillance." The trial court implicitly rejected Cruz' claim.

After trial Cruz appealed his conviction and also renewed his claim of wiretapping in a motion to vacate his conviction. The State responded to the motion with an affidavit of the prosecutor denying that he had engaged in wiretapping or that any questions asked of any witnesses had been based on information obtained from wiretapping. The trial court denied the motion, relying on N.Y.Crim.Proc.Law § 440.10(2)(b) (McKinney 1971), which requires denial of a motion to vacate when an appeal is pending and "sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review

thereof upon such an appeal." Leave to appeal the denial of the motion to vacate was denied. On the direct appeal the conviction was thereafter affirmed by the Appellate Division without opinion, *People v. Cruz,* 41 A.D.2d 1027, 343 N.Y.S.2d 786 (1st Dep't 1973), and by the Court of Appeals with opinion, 34 N.Y.2d 362, 314 N.E.2d 39, 357 N.Y.S.2d 709, *modified,* 35 N.Y.2d 708, 320 N.E.2d 274, 361 N.Y.S.2d 641 (1974). The Court of Appeals explicitly considered the wiretapping claim and rejected it. The Court assessed Cruz's claim, based on the two trial episodes, as "little more than speculative," *id.* 34 N.Y.2d at 369, 314 N.E.2d at 43, 357 N.Y.S.2d at 714, and found the claim sufficiently answered by the prosecutor's denial of wiretapping and by the trial court's "perusal of the prosecutor's file for traces of eavesdropping evidence, which revealed none," *id.* at 368, 314 N.E.2d at 43, 357 N.Y.S.2d at 713.

Cruz then filed a habeas corpus petition in the District Court for the Southern District of New York. Judge Sweet ruled that Cruz' conviction should be vacated. *Cruz v. Alexander,* 477 F.Supp. 516 (S.D.N.Y.1979). Judge Sweet first considered whether *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), precluding habeas corpus review of state court Fourth Amendment rulings, barred consideration of Cruz' claims based on the federal wiretapping statute, 18 U.S.C. § 2515 (1976), and the Sixth Amendment. He concluded that *Stone* was inapplicable, but ruled, alternatively, that even if *Stone* applied, Cruz' claims should be considered because the state courts "failed to provide 'an opportunity for full and fair litigation'" of his claims. 477 F.Supp. at 522 (quoting *Stone v. Powell, supra,* 428 U.S. at 495 n. 37, 96 S.Ct. at 3052–53 n. 37). Judge Sweet based this conclusion on the following circumstances. The state trial court, in rejecting Cruz' motion to vacate his conviction, had "declined to consider [the wiretapping] claim ..., assuring only that sufficient facts had been entered into the record to enable an appellate court to decide petitioner's claim." *Id.* at 522. In affirming Cruz' conviction, the New York Court of Appeals had initially included in its opinion the following footnote:

> Moreover, we are advised that the allegations of wiretapping of counsel were reasserted in a post judgment motion to vacate the conviction on which the People submitted an affidavit in opposition containing specific denials. The motion to vacate was denied and apparently no appeal was pursued. While we might otherwise be disposed to remand for further proceedings with respect to these allegations, in light of these developments such a course would now be purposeless.

*People v. Cruz,* No. 271, slip op. at 4 n. 2 (N.Y.1974), *quoted in Cruz v. Alexander, supra,* 477 F.Supp. at 522. Upon Cruz' motion for reargument to the Court of Appeals, that Court amended its opinion by deleting the footnote, explaining that the deletion would "clarify the basis for [its] holding." *People v. Cruz,* 35 N.Y.2d 708, 708, 320 N.E.2d 274, 274, 361 N.Y.S.2d 641, 641 (1974).

In Judge Sweet's view, the New York courts had placed Cruz in a "procedural 'catch-22,'" whereby "neither the trial nor appellate courts addressed the merits of Cruz' wiretap claim because each believed the other had done or would do so." 477 F.Supp. at 523.

Turning to the merits, Judge Sweet ruled that 18 U.S.C. § 3504 (1976 & Supp. IV 1980) imposed upon the state prosecutor an obligation to affirm or deny Cruz' allegations of wiretapping and that the prosecutor's denial filed in the state trial court was deficient since it denied only the prosecutor's wiretapping and not that of pertinent law enforcement agencies. Accordingly, he directed the State to furnish responses from eleven federal, state, and local law enforcement agencies affirming or denying wiretapping of approximately 25 persons and locations listed by Cruz. *Id.* at 522–26. When the state prosecutor submitted denials from the law enforcement agencies together with his own affidavit detailing the procedures he had used in making requests of the agencies, Judge Sweet ruled that the denials were deficient because they were

not in affidavit form. Because of that deficiency Judge Sweet granted Cruz' petition and ordered his conviction vacated. 509 F.Supp. 640 (S.D.N.Y.1980).

On the State's appeal from that ruling, we reversed. 669 F.2d 872 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 99, 74 L.Ed.2d 89 (1982). Initially, we noted the State's renewal of its contention that *Stone v. Powell, supra,* precluded consideration of the merits and its disagreement with Judge Sweet's alternative ruling that the state courts had not provided opportunity for full and fair litigation of Cruz' claim. As to these points we stated: "Since the district judge ruled on the merits of the important issue before us and committed error, we believe that we should reach the merits as well. We express no view on the preliminary issues decided by the court below." 669 F.2d at 874 n. 2. Turning to the merits, we rejected Judge Sweet's premise that section 3504 applies to state court trials or to federal habeas corpus challenges to state court convictions. *Id.* at 875 & n. 3. We also ruled that even on the assumption that federal law imposes upon prosecutors in state proceedings some obligation "akin to the § 3504 procedure" in federal prosecutions to affirm or deny allegations of wiretapping, Cruz was not entitled to relief because the State's denial, submitted to Judge Sweet, satisfied even the obligation section 3504 imposes with respect to federal prosecutions. *Id.* at 875–77. Since Judge Sweet had granted relief only because of his ruling that the State's denial was deficient, we reversed the grant of habeas corpus relief and ordered reinstatement of the conviction.

After our decision, Cruz first took the position in the District Court that our reversal had adjudicated only the "formal" sufficiency of the State's denial of wiretapping and permitted him to proceed with a hearing to determine the "factual" sufficiency of the denial, by which he meant whether, apart from the lack of agency affidavits, the denial was sufficiently detailed and comprehensive. On May 24, 1982, Judge Sweet correctly ruled that our decision precluded such a hearing, since we

had stated our view that "the state's denial of wiretapping contains no deficiency cognizable on federal collateral attack." *Id.* at 873. However, Judge Sweet suggested that the unavailability of a further inquiry as to the sufficiency of the denial did not necessarily preclude a further hearing as to whether wiretapping had occurred. To pursue this factual inquiry, Cruz then served a massive discovery request that probed deeply into the investigative files of all of the law enforcement agencies that had denied wiretapping Cruz, his associates, or his lawyers. On September 14, 1982, Judge Sweet ruled that Cruz was entitled to discovery and rejected the State's claim that our prior ruling foreclosed any further proceedings. That ruling prompted the State to move in this Court for an order directing Judge Sweet to dismiss the habeas corpus petition. Subsequently, Cruz submitted a motion requesting that we recall our mandate and rule, as Cruz had initially urged, that agency denials of wiretapping be submitted in affidavit form.

■ Our prior decision did not explicitly direct that Cruz' habeas corpus petition should be dismissed, nor did it explicitly provide that the matter was remanded to the District Court for further proceedings. The lack of either direction has left the parties in dispute as to whether Judge Sweet had any authority, after issuance of our mandate, to assess the merits of Cruz' contention that he had been the victim of illegal wiretapping. There is considerable force to the State's argument that our prior opinion, directing that the judgment of conviction be reinstated and omitting any direction for a remand for further proceedings, ended the litigation and left nothing more for the trial court to do except enter a revised judgment. *See Communist Party v. Subversive Activities Control Board,* 254 F.2d 314, 321 (D.C.Cir.1958) ("Of course, if the Supreme Court reversed and directs that a certain final judgment be entered, the whole controversy is ended"). However, we are unwilling to rest decision on the inferences that might be drawn from our prior opinion. The parties' motions

have prompted us to give the matter renewed consideration, and we now conclude that one of the threshold issues left open in our prior opinion should be considered and that its resolution leads to a final disposition of this case. That issue, on which we invited and have received supplemental memoranda from the parties, concerns the adequacy and conclusiveness of the rejection by the New York Court of Appeals of the merits of Cruz' claim that wiretapping occurred.

As our recital of the procedural history of the litigation indicates, Judge Sweet had found the consideration given by the New York Court of Appeals inadequate because, as he viewed the situation, that Court had not considered the merits in the mistaken belief that Cruz had not pursued an appeal from the denial of his motion to vacate. Judge Sweet's view arguably drew some support from footnote 2 of the Court of Appeals' original opinion, although the text of the opinion seems plainly to be a square ruling on the merits. In any event, once the Court of Appeals modified its initial opinion by deleting footnote 2, it left its rejection of Cruz' wiretapping claim grounded solely on the Court's assessment that the claim was "little more than speculative" and not entitled to credence in light of the prosecutor's denial of wiretapping and the state court trial judge's inspection of the prosecutor's file. We disagree with Judge Sweet that this conclusion of the Court of Appeals is a failure to assess the merits of Cruz' claim. On the contrary, it is an assessment and a rejection of the claim on its merits.

Though the Court of Appeals did not explicitly recite as a finding that no wiretapping occurred, that is the implicit effect of its conclusion that Cruz' claim of wiretapping was "little more than speculative" and did not require more than the minimal denial made by the state prosecutor. A finding of fact is simply a conclusion that the existence of a fact has either been proved or not been proved by evidence of sufficient probative force to satisfy the requisite burden of proof. The burden was upon Cruz to prove by a preponderance of the evidence that wiretapping of his counsel had occurred. In support of that claim he offered as evidence the two episodes from his trial that we have recounted. When the Court of Appeals concluded that the inference of wiretapping arising from these episodes was not even strong enough to require the State to do more than make the minimal denial submitted by the state prosecutor to the state trial court, the State's highest court was implicitly concluding that the inference was manifestly insufficient to persuade it by a preponderance of the evidence that wiretapping of Cruz' counsel had occurred. A court that concludes that evidence is too insubstantial to establish a prima facie case, *i.e.,* a case that warrants substantial rebuttal by the opposing party, surely has concluded that the evidence is not persuasive of the fact sought to be proved. The Court of Appeals thus made a resolution of the factual issue.

The state court's fact-finding "shall be presumed to be correct" by a federal habeas corpus court in the absence of one of the eight exceptions set forth in 28 U.S.C. § 2254(d) (1970). *See Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The only exception that arguably applies is "(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding," a standard equivalent to the exception to the preclusion rule of *Stone v. Powell, supra,* an exception that Judge Sweet found to be applicable. But, as we have noted, we are satisfied that the Court of Appeals did not avoid a ruling on the merits because of procedural matters, as Judge Sweet feared, but instead assessed for itself the evidentiary significance of Cruz' showing and found it to be inadequate to support a conclusion that wiretapping had occurred. Had we been the state fact-finder, we might have characterized Cruz' showing in terms stronger than "little more than speculative," though we would not necessarily have differed with the Court of Appeals in declining to draw from this evidence the inference that wire-

tapping occurred.[1] Be that as it may, the federal habeas corpus court was not free to disregard the factual conclusion of the New York Court of Appeals that wiretapping did not occur, since Cruz did not allege facts that would permit a trier to find that the presumption of correctness had been overcome by 'convincing evidence.' 28 U.S.C. § 2254(d); *LaVallee v. Delle Rose,* 410 U.S. 690, 695, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973). The State Court's conclusion concerned a "basic, primary, or historical" fact to which the presumption of correctness applies. *Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1714–15, 64 L.Ed.2d 333 (1980).

In our prior opinion, we were willing to assume the existence of some federally mandated requirement to affirm or deny the existence of wiretapping in state prosecutions, and, on that assumption, we assessed the sufficiency of the denial the State submitted to Judge Sweet. If there had not been adequate state court fact-finding as to whether wiretapping had occurred, we would agree with Judge Sweet that our ruling on the sufficiency of the denial of wiretapping would not foreclose the habeas corpus court from determining whether wiretapping had occurred,[2] though we would seriously question the propriety of the broad discovery the District Judge permitted. However, now that the parties

have joined issue on the legitimacy of any further proceedings in the District Court, we deem it appropriate to adjudicate the issue, previously left open, as to the adequacy of state court fact-finding.[3] As we have noted, the New York Court of Appeals found that wiretapping did not occur. Since that finding was made when the inference of wiretapping available from Cruz' evidence of trial episodes was met only by the state prosecutor's minimal denial, the finding obviously cannot be disregarded now that the federal court has obtained a sufficient denial of wiretapping from eleven federal, state, and local law enforcement agencies.

■ We therefore treat the State's motion as a motion to clarify our prior opinion and rule that our prior holding as to the sufficiency of the State's denial of wiretapping, coupled with our holding today that Cruz has alleged no facts that would permit a federal habeas court to disregard the presumptive correctness of the state court's fact-finding that no wiretapping occurred, leaves no issue open for further consideration by the District Court and requires that the habeas corpus petition be dismissed.

Finally, we reject Cruz' suggestion that we should discard our prior opinion and now

---

1. The record contains an affidavit from the state court prosecutor that "The Anarchist's Cookbook" is an underground publication known to law enforcement officials and that he was familiar with it prior to Cruz' trial. The prosecutor had no recollection as to how he learned the name of Sister Anne Marie. He speculated that it may have been mentioned in court by counsel.

2. Though numerous decisions have held that a denial of wiretapping suffices to foreclose further inquiry concerning the basis for questions asked of grand jury witnesses, *e.g., In re Hodges,* 524 F.2d 568 (1st Cir.1975); *United States v. Stevens,* 510 F.2d 1101 (5th Cir.1975), we are not aware of any decision requiring that conclusive effect be given to a denial of wiretapping in the context of a criminal trial, nor do we believe that the rule in the grand jury context should be extended to criminal trials. These two proceedings differ significantly. In grand jury questioning, there is greater concern for expedition. Moreover, questioning a grand jury witness based on wiretapped information has less serious consequences than those aris-

ing from convicting a criminal defendant on the basis of such evidence. Of course, in a criminal trial, a judge is entitled to accept the prosecution's denial of wiretapping, and need not hold a hearing in the absence of some strong showing of circumstances casting doubt on the denial. *See United States v. D'Andrea,* 495 F.2d 1170, 1174 (3d Cir.) (per curiam) (adopting in the criminal trial context the rule that denial of wiretapping of a grand jury witness can preclude a hearing in the absence of evidence that the denial is "false or defective," *In re Horn,* 458 F.2d 468, 470 (3d Cir.1972)), *cert. denied,* 419 U.S. 855, 95 S.Ct. 101, 42 L.Ed.2d 88 (1974). However, when a criminal defendant has made a strong showing of wiretapping, a trial court need not accept the prosecutor's denial as conclusive and may hold a hearing as to whether wiretapping occurred.

3. Arguably, we could permit the proceedings to unfold in the District Court and await Judge Sweet's fact-finding as to whether wiretapping occurred. However, since Cruz has not alleged facts that would permit the District Judge to

require that agency denials of wiretapping be submitted in affidavit form. Cruz presses this point, despite our prior denial of rehearing and the Supreme Court's denial of his petition for a writ of certiorari, because of the subsequent disclosure by the United States Attorney for the Southern District of New York that Cruz had been unlawfully overheard by the Federal Bureau of Investigation during a telephone conversation with the New York office of the Black Panther Party on July 16, 1969. That overhearing, resulting from electronic surveillance of the Black Panther Party office, not Cruz, intercepted the uninformative statement by Cruz that he had "something important to discuss" but did not "want to do it over the phone." Petitioner makes no claim that this 1969 conversation had anything to do with his activity on March 18, 1971, when he was found in possession of an explosive device, the conduct for which he stands convicted.[4] The late disclosure of this overhearing, which appears to be attributable to incomplete searching of indices by the Federal Bureau of Investigation, provides no reason to alter our view that agency denials of wiretapping are not required to be submitted in affidavit form. If such a requirement is to be written into section 3504, that is a matter for Congress.

Accordingly, we clarify and augment our prior opinion as indicated herein and revise our mandate to direct not only that Cruz' conviction be reinstated but also that the petition for habeas corpus be dismissed.

MANSFIELD, Circuit Judge (dissenting):

I respectfully dissent for the reason that in my view the majority errs in concluding that the New York Court of Appeals implicitly found in *People v. Cruz,* 34 N.Y.2d 362, 314 N.E.2d 39, 357 N.Y.S.2d 709 (1974), that

"wiretapping did not occur." (Maj. op. 36). In addition, although the state's denial of wiretapping is proper in form, as we held in *Cruz v. Alexander,* 669 F.2d 872 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 99, 74 L.Ed.2d 89 (1982), its content is incomplete and should be supplemented. For these reasons I would remand the case for limited further proceedings.

Congress has by statute barred the use in either federal *or state* proceedings of the contents of any conversation wiretapped in violation of procedures required by federal law. See 18 U.S.C. § 2515; see also §§ 2516–19 (outlining proper procedures). In addition, the Sixth Amendment prohibits the receipt by a prosecutor of privileged information pertaining to an individual's preparation of his defense to criminal charges that is gained from wiretapping or the presence of an informer in the defense camp. See *Weatherford v. Bursey,* 429 U.S. 545, 554 & n. 4, 97 S.Ct. 837, 843 & n. 4, 51 L.Ed.2d 30 (1977). A defendant who believes that he has been wiretapped, however, will usually be faced with formidable difficulties in finding direct evidence, such as an actual "bug," to support his claim; typically, all he will be able to produce is circumstantial evidence that his conversations, or those of his attorney, have been overheard.

Recognizing these evidentiary difficulties, Congress has provided for a specific procedure, applicable in terms only to federal prosecutions, whereby a defendant who makes a colorable claim that some evidence against him is the product of illegal electronic surveillance may require the prosecutor to "affirm or deny" that wiretapping has occurred. See 18 U.S.C. § 3504. The extent of the prosecutor's obligation to respond depends on the strength of the de-

---

disregard the presumption of correctness that 28 U.S.C. § 2254(d) accords to the contrary finding of the New York Court of Appeals, and since the parties have now brought the case back to us by motions, the interests of judicial economy warrant our grappling with the entire controversy at this stage and resolving it.

**4.** The circumstances of Cruz' arrest undermine any claim that wiretapping contributed to police awareness of his criminal conduct. Cruz

was arrested after New York City police officers approached a car that was stopped and blocking traffic. After the police checked and returned to the driver his license and registration, Cruz, who was a passenger in the car, suddenly reached for a brown bag on the rear seat. When the police officer grabbed the bag, Cruz cautioned the officer to be careful because the bag contained a bomb. That episode led to the discovery of the bomb inside the bag and Cruz' subsequent arrest and conviction.

fendant's showing: a weak showing is satisfactorily answered by a correspondingly minimal denial, while a strong showing requires the prosecutor to make a more detailed inquiry into whether any state or federal agency in fact wiretapped the defendant. See *United States v. Gardner*, 611 F.2d 770, 774 (9th Cir.1980); *United States v. Yanagita*, 552 F.2d 940, 944 (2d Cir.1977); *In re Buscaglia*, 518 F.2d 77 (2d Cir.1975). While the procedure under § 3504 is not in terms applicable to state proceedings, some substantially similar procedure must be followed in state actions to give defendants a reasonable opportunity to vindicate their rights under § 2515 and the Sixth Amendment. See *People v. Cruz, supra,* 34 N.Y.2d at 369–70, 314 N.E.2d at 43, 357 N.Y.S.2d at 714.

During the trial Cruz initially made a weak showing, to which the state prosecutor responded that he had "nothing ... derived from any ... surveillance of the nature [Cruz's counsel] was talking about" and disclosed portions of his file to the trial judge. The trial judge properly denied Cruz's motion. Thereafter, however, the prosecutor in his summation referred to the testimony of a "Sister Anne Marie," identified by him as a character witness for Cruz, even though no such person had testified at any time or been mentioned during the trial.

Cruz and his trial counsel swore in a post-judgment motion to vacate his conviction that the name of "Sister Anne Marie" had been mentioned only once during a telephone conversation between Cruz's counsel and a third party the day before the prosecutor's summation. These facts raise a much stronger suspicion that the state's case may have been derived in part from wiretapping in violation of Cruz's Sixth Amendment right to counsel. Yet the prosecutor did not expand on his earlier response. He was not required by the trial court to explain how he learned of "Sister Anne Marie" and no hearing was held to determine whether wiretapping had occurred and, if so, whether any of the state's

case had been derived from such tapping. Upon appeal, after the Appellate Division affirmed without opinion, 41 A.D.2d 1027, 343 N.Y.S.2d 786, the Court of Appeals, granting leave to appeal, affirmed by opinion, 34 N.Y.2d 362, 314 N.E.2d 39, 357 N.Y. S.2d 709 (1974), which it later modified and supplemented, 35 N.Y.2d 708, 320 N.E.2d 274, 361 N.Y.S.2d 641 (1974). These opinions shed considerable light on the question of whether the state courts ever found that wiretapping of Cruz had not occurred, as the majority here asserts.

In its first opinion the Court of Appeals characterized Cruz's "initial allegation of eavesdropping ... as vague, conclusory and unsupported ... [which] barely sufficed to shift to the People the burden of responding" and held that the "People's denial ... sufficiently met the allegation." With this holding I do not disagree. With respect to Cruz's post-trial allegation based on the prosecutor's mysterious reference to "Sister Anne Marie" in his summation the New York Court of Appeals initially wrote in a footnote:

"Moreover, we are advised that the allegations of wiretapping of counsel were reasserted in a post judgment motion to vacate the conviction on which the People submitted an affidavit in opposition containing specific denials. The motion to vacate was denied and apparently no appeal was pursued. While we might otherwise be disposed to remand for further proceedings with respect to these allegations, in light of these developments such a course would now be purposeless." *People v. Cruz,* Slip Op. No. 271, p. 4 (Ct.App.1974).

When Cruz moved for reargument on the ground that there had not been any such post-trial disposition on the merits by the trial court of the wiretapping question, the Court of Appeals deleted its footnote, stating in its final published opinion that "Allegations respecting ... the reference in summation to Sister Annmarie, following, as they did, so closely upon the previous

denial, are fairly within its sweep as well. And these latter allegations, although more specific, were, on the record before us, little more than speculative." 34 N.Y.2d at 368–69, 314 N.E.2d at 42–43, 357 N.Y.S.2d at 1713–14.

I submit that this decision is not, as the majority states, a finding "that wiretapping did not occur." (Maj. op. at 36). Rather, the Court of Appeals found that the "Sister Anne Marie" allegations were too vague, conclusory and unsupported to warrant an inquiry—a finding with which I, and I believe even the majority here, disagree. The Court of Appeals thus ended its inquiry into whether wiretapping occurred after making only a *threshold* determination that Cruz had not presented facts raising a reasonable suspicion of wiretapping. Such a threshold finding—in effect, a decision not to make a careful inquiry into whether Cruz had been wiretapped—can hardly be converted into a finding that no wiretapping took place. Since the New York courts never "found" that wiretapping "did not occur," there was no finding of fact on that issue which would bind us in this habeas corpus proceeding. See 28 U.S.C. § 2254(d).

Nor, surely, are we bound by the New York court's erroneous threshold determination that the "Sister Anne Marie" incident did not raise a reasonable suspicion of wiretapping. Such a determination is not a finding of "basic, primary, or historical fact[ ] . . . in the sense of a recital of external events and the credibility of their narrators." *Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980), *quoting Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963). At most it "is a mixed determination of fact and law . . . open to review on collateral attack in a federal court." See *Cuyler, supra,* 446 U.S. at 342, 100 S.Ct. at 1715. Upon this petition for habeas corpus we cannot therefore rely on the state's fact-finding procedure as precluding a federal inquiry. See 28 U.S.C. § 2254. Indeed, absent a state finding of fact on whether wiretapping occurred, we must resolve that issue.

Nor is such an inquiry barred by our prior decision in this case. Thus far our federal inquiry on this habeas petition has only been into the *form* of the denials of wiretapping, i.e., whether each investigating agency must submit an affidavit rather than a letter response, but not into the substantive issue, i.e., whether any wiretapping in fact occurred. Although we stated in our prior opinion that the state's denial of wiretapping "contains no deficiency cognizable on federal collateral attack," 669 F.2d at 873, we were referring only to the alleged deficiency in form which was the subject of our opinion, 669 F.2d at 875–76. Our decision was not an adjudication "of any other than the questions in terms discussed and decided." *Imperial Chemical Industries, Ltd. v. National Distillers and Chemical Corp.,* 354 F.2d 459, 463 (2d Cir. 1965).

The record reveals that a limited inquiry by the district court into whether wiretapping occurred is advisable in this case. In prior proceedings before that court, various state and federal agencies were ordered to determine whether or not they had any records of wiretapping of Cruz. To date, with one exception to be discussed below, all of these agencies have responded by denying that any wiretapping took place. However, some of the denials are incomplete in material substantive aspects. For instance, the investigator in the office of the District Attorney of New York County denied only that his office had any records of electronic surveillance "ordered by the courts," thus leaving open the possibility that wiretapping *not* ordered by the courts was performed. The FBI's denial does not state whether its New York field offices were checked, which becomes significant in light of later developments discussed below. In addition, the responses of the U.S. Customs Service, the CIA, and the Bureau of Alcohol, Tobacco and Firearms of the Treasury Department are likewise incomplete in that they deny only that Cruz was the "subject" of electronic surveillance, leaving open the possibility that he or his attorneys were overheard on wiretaps directed toward others.

The need for a limited inquiry into the substantive adequacy of the state's denial of wiretapping has been strengthened by the recent disclosure that on July 16, 1969, Cruz was overheard by the FBI, on its wiretap of another person, having a brief conversation with a member of the Black Panther Party in New York. On June 18, 1980, in response to a request from an Assistant Attorney General from the State of New York, the FBI reported that a search of its indices of electronic surveillance had turned up no indication that Cruz was "the target of electronic surveillance" or was "monitored by any electronic device of the FBI," or was "known to have owned, leased or licensed premises on which the FBI maintained an electronic surveillance." See Exhibit F, at 3. On June 20, 1980, Cruz presented the district court with a memorandum from the New York office of the FBI, obtained a few days earlier through the Freedom of Information Act, stating that Cruz had been overheard on the July 16, 1969 wiretap. On July 15, 1980, the FBI wrote to the New York Assistant Attorney General on the case to confirm the accuracy of the information previously disclosed to Cruz; the district court was not told of this confirmation until November 1982. Although the state prosecutor's failure to notify the court was attributable to an oversight on the part of the FBI, these facts do indicate the advisability of a further inquiry into whether Cruz was in fact overheard on other wiretaps.

The need for limited further inquiry is also highlighted by the fact that at the time the wiretapping allegedly took place, Cruz was classified in FBI records as "EM–UGW," meaning "Extremist Matters—Urban Guerrilla Warfare." This occurred at a time when the FBI, according to one of its internal memoranda, maintained special "JUNE" files pertaining to "technical surveillances, microphone surveillances where trespass is involved, [and] 'black bag jobs' . . . ." Exhibit I at 3–4. The same FBI document states that "all sources used in criminal . . . investigations where the code word 'JUNE' is utilized were sources illegal in nature and, of course, to protect these

sources all information is included in the 'JUNE' file . . . ."

Since Cruz has raised a reasonable suspicion that his counsel's "Sister Anne Marie" conversation may have been wiretapped, which would amount to a violation not merely of his statutory but of his Sixth Amendment rights, I would remand the case to the district court to permit an inquiry to determine whether the state obtained the "Sister Anne Marie" information from illegal electronic surveillance and, if so, what relief is appropriate. See *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *United States v. Morales,* 635 F.2d 177 (2d Cir. 1980). In view of the above-mentioned substantive incompleteness of some of the responses to the allegations of eavesdropping I would clarify our earlier opinion by instructing the district court to permit very limited discovery into the origin of the prosecutor's "Sister Anne Marie" references and to order the state to obtain from the foregoing agencies complete responses remedying the deficiencies I have noted.